W. H. WEISETH, APPELLEE, v. MERRILL KARLEN,
DOING BUSINESS AS THE KARLEN FAMILY RANCH,
APPELLANT.

295 N. W. 2d 103

Filed July 15, 1980. No. 42944.

George H. Moyer, Jr. of Moyer, Moyer & Egley, for appellant.

Curtiss & Baird, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

The plaintiff, a veterinarian residing in Plainview, Nebraska, brought an action in the District Court for

Pierce County, Nebraska, for the value of liquid protein supplement furnished to the defendant's cattle in Pierce County, Nebraska, in December 1976. The defendant answered and cross-petitioned against the plaintiff, acknowledging that the plaintiff had agreed to supply liquid protein supplement to the defendant's cattle but alleging that the plaintiff had also promised that he would supervise the feeding of the liquid protein. The defendant further alleged that the failure to properly supervise the feeding of the liquid protein led to the death of two cows and to 194 calves being aborted or born dead. The defendant prayed for damages. The trial court sustained the plaintiff's motion for summary judgment against the defendant on the plaintiff's cause of action for the value of the liquid supplement and the cause proceeded to trial on the defendant's cross-petition. The trial was had to a jury and the jury returned a verdict in favor of W. H. Weiseth, the plaintiff in the original action and the defendant on the cross-petition. Merrill Karlan, the defendant and cross-petitioner, appeals.

The defendant cross-petitioner assigns five errors. They essentially relate to three jury instructions that the court gave on its own motion: Instructions 12A, 12B, and 12C, dealing with the possible negligence of a party other than the plaintiff. We affirm.

Merrill Karlen was a rancher with his residence at Reliance, South Dakota. By reason of drought, Karlen contracted, through an agent and banker, with Leonard Wostrel of Plainview, Nebraska, to care for 850 cows through the winter months of 1976-77. The cattle were delivered and grazed on standing cornstalks and stover, which is chopped and stacked cornstalks. Wostrel agreed in writing to care for the cattle, feed them stover when they could not graze, furnish water tanks and equipment, and check the water, and further, to guarantee the count of the cattle when removed from the Wostrel farm

back to South Dakota. Weiseth, a retired veterinarian, met Karlen at the Wostrel place in November 1976 and discussed with him a proposal to feed liquid protein feed to Karlen's cattle for an agreed price per pound. Karlen agreed to purchase the feed and Weiseth agreed to furnish some lick tanks and to check on consumption of the feed. Weiseth delivered approximately 19,000 pounds of the liquid feed on December 1, 1976, and refilled the tanks on December 11 with approximately 18,500 pounds. According to his testimony, Weiseth frequently checked on the tanks and tested the feed levels with a dip stick. During two of his periodic inspections, he observed dry water tanks.

On one of his inspection visits to the Wostrel farm, Weiseth discovered a dead cow and reported it to Karlen. A veterinarian from South Dakota was contacted and autopsied the cow discovered by Weiseth and another cow found dead at about the same time by one of Wostrel's employees. On examination, the veterinarian, Richard B. Autrie, discovered that the cows' rumens were completely full of corn shucks coated with a brown gelatinous material, like a great popcorn ball. The impaction prevented the normal digestive system of the cows from functioning. The rumen is the main portion of the stomach, where fermentation bacteria are present and cellulose is broken down into carbohydrates. There was an almost complete absence of water in the rumen. It was Autrie's opinion that the cause of the impaction was the improper method in which the liquid protein, consisting of a great deal of sugar and molasses, was fed to Karlen's cows. "[T]hese cattle had overloaded on corn shucks and protein, a liquid protein and it just glued it together to form what I referred to as a big popcorn ball." Autrie further observed that a great many of Karlen's remaining cattle were humpbacked and gaunt, which led him to believe that they, too, were suffering from

impaction. On his suggestion, the liquid protein feed was discontinued and the remainder of the cows recovered.

The cows started to calf in the middle of April and, according to Karlen's testimony, he had an unusually high death loss from cows that had wintered on the Wostrel farm. The Wostrel cows produced only 628 live calves and 194 calves were either aborted or born dead to cows who had been pregnant when tested in the fall. It was the opinion of Autrie that the impaction in the herd and poor digestion, which he attributed to the improper feeding of the liquid protein, created a toxin as a by-product of the decomposition of the impacted material which was absorbed through the placenta membrane and into the calf, causing a weak and sick, or dead, calf.

There was a substantial dispute in the evidence with respect to the level at which the liquid protein was absorbed by the cattle, but the parties agreed that approximately 2 to 3 pounds a day for each animal would be normal and healthful for the cows. Karlen's evidence indicated that the consumption was substantially in excess of this and that Weiseth was negligent in not diluting the liquid protein or cutting down the number of lick wheels that fed the protein to the cows. Testifying for Weiseth, Raymon A. Anderson, a veterinarian from Pierce, Nebraska, disputed the rate at which the cattle were fed and said that he would have expected impaction in pregnant cows to result in death of the cows or in quite uneventful recoveries with no resulting effect on the calves. Further, the method of feeding the cows by free choice lick tanks without any limitations was a reasonable, ordinary way to feed.

Both Autrie, on behalf of Karlen, and Anderson, on behalf of Weiseth, testified that a deprivation of water would cause some impaction in cattle eating stover. Wostrel, testifying on behalf of Karlen, stated that an adequate supply of water was always

present during the entire time that the cattle were in his care and he generally disputed the testimony of Weiseth that there were dry tanks on two occasions when Weiseth inspected the water tanks.

Essentially, Karlen urges that there was not sufficient evidence to submit Instruction 12A to the jury since there was no evidence of negligence of a third party, i.e., Wostrel.

Instruction 12A followed NJI 3.42 and read:

> Where the independent acts or omissions to act of two or more persons combine to proximately cause an injury indivisible in its nature, each such act or omission to act is itself a proximate or concurrent cause, and any one or more of such persons may be held responsible for the entire injury. This is true even though one may have been more negligent than the other. It is no defense that all those who might have been held responsible are not made parties to this action.

There was evidence from which the jury could have concluded that Wostrel, who had the obligation to see than an adequate water supply was present at all times for the Karlen cattle, failed in that duty. There was also evidence from expert witnesses that, with the feeding of stover and/or liquid protein, an adequate water supply is essential. There was further evidence that there was little if any water in the rumens of the dead cattle. As a Comment to NJI 3.42 said, "The jury must be instructed upon the rights and liabilities of the parties under the theory of concurrent negligence if the evidence warrants, even though the issue is not pleaded and no instruction is requested. Barry v. Moore, 172 Neb. 57, 108 N.W.2d 401 (1961)." There was evidence from which a jury could have concluded that a third party, Wostrel, was negligent. Therefore, the trial court was correct in submitting the issue to the jury.

The assignment is without merit.

The court's Instruction 12B was as follows:

One of the issues in this case is whether the occurrence giving rise to the death of defendant's cattle and calves was caused by the conduct of Leonard Wostrel. If you find the sole proximate cause of the occurrence was the conduct of Leonard Wostrel then your verdict should be for the plaintiff.

The burden of proof on this issue is on the defendant; that is, the defendant has the burden to prove that some negligence of plaintiff as set forth in Instruction 3, was the proximate cause or a proximately-contributing cause of the occurrence and that therefore, the negligence of Leonard Wostrel was not the sole proximate cause thereof.

The instruction is consistent with, and derived from, the language of NJI 2.01A (1975 Pocket Part). The defendant does not argue that Instruction 12B is not a correct statement of the law but, essentially, argues the same point as in his first assignment of error: That there was no evidence whatever that the conduct of Leonard Wostrel in any way contributed to the death of the cattle or to the loss of the calves. As before discussed, there was evidence from which a jury could have concluded that Wostrel was negligent and that his negligence was the proximate cause of the defendant's loss. The assignment is without merit.

The court's Instruction 12C, drawn from NJI 3.43, read as follows:

An efficient intervening cause is a new and independent act, itself the proximate cause of an injury, which breaks the causal connection between the original wrong and the injury. A person is not legally responsible for an injury if it would not have resulted but for the interposition of an efficient

intervening cause, which he should not have reasonably anticipated.

It is usually difficult to distinguish between that which is a cause and that which is only a· condition. An alleged cause may be merely a condition and not a real cause. It is not sufficient if the conduct charged, whether wrongful or not, does nothing more than furnish a condition by which an injury is made possible. If a condition permits injury through the subsequent independent act of another, the condition is not a proximate cause of the injury.

Ordinarily, the normal actions of animals are not causes, but are conditions which, if present, affect only the required standard of conduct.

Again, Karlen argues there was insufficient evidence to justify the instruction. Karlen contends that Wostrel's conduct could not have, in any circumstance, consisted of an efficient intervening cause. There was evidence from which the jury could have believed that, even if Weiseth was negligent and somehow caused the impaction to the cattle, such negligent feeding would have no effect on the cows that recovered (and all except two did recover) and no effect whatever on the production of live calves.

Karlen's contentions are without merit and the judgment of the trial court is affirmed.

AFFIRMED.