SONJA WORTH, AS MOTHER AND NEXT FRIEND OF AUSTIN WORTH, A MINOR, APPELLANT AND CROSS-APPELLEE, V. TERRENCE J. KOLBECK, M.D., APPELLEE AND CROSS-APPELLANT.

728 N.W.2d 282

Filed March 9, 2007.    No. S-05-269.

Ronald J. Palagi and Joseph B. Muller, of Law Offices of Ronald J. Palagi, P.C., L.L.O., for appellant.

Patrick G. Vipond and Denise M. Destache, of Lamson, Dugan & Murray, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HEAVICAN, C.J.

### NATURE OF CASE

This is a medical malpractice action brought by Sonja Worth on behalf of her son, Austin Worth, against Terrence J. Kolbeck,

M.D. Sonja alleged that Kolbeck's negligence caused severe brain injuries to Austin shortly before his birth. The case was tried to a jury, which returned a verdict in favor of Kolbeck. Sonja assigns errors related to the jury instructions and the court's admission of deposition testimony from Sonja's designated expert taken for discovery. We conclude that Sonja's assigned errors do not require reversal.

## BACKGROUND

The bill of exceptions does not include most of the trial. It is limited to the arguments regarding the admissibility and the reading into evidence of deposition testimony from Sonja's medical expert, Dr. Stephen Glass; two jury instruction conferences; and the testimony of an expert document examiner, Marlin Rauscher.

The transcript shows that in April 1999, Sonja filed this action on behalf of Austin. Although the original action included a claim by the parents, Sonja and Mark Worth, that claim was dismissed at some point. Sonja alleged the following facts in her complaint. Sonja "has had controlled, Type I diabetes mellitus since 1992." On April 9, 1997, Sonja was 33 weeks pregnant with Austin and was admitted to an Omaha, Nebraska, hospital emergency room at 5:44 p.m., suffering from diabetic ketoacidosis. Ketoacidosis is the "presence of an excessive amount of ketone bodies [acids] in the tissues and body fluids."[1] Austin was diagnosed with hypoxic-ischemic encephalopathy, directly related to Sonja's ketoacidosis. This diagnosis refers to a perinatal brain injury due to lack of oxygen.[2]

Sonja alleged that from 6:15 to 6:30 p.m. on April 9, 1997, Austin's heartbeats were undetectable. The hospital placed Sonja on fetal monitoring and at 6:40 p.m., consulted Kolbeck. Austin's assessment did not change appreciably throughout the night, and at 7:40 the next morning, Kolbeck ordered an ultrasound, which Sonja alleged suggested "severe placental dysfunction and fetal compromise." At 9:44 a.m., an emergency cesarean section was performed. Sonja alleged that Austin suffered brain injuries as

---

[1] Attorney's Illustrated Medical Dictionary K5 (West 1997).

[2] See 1 Steven E. Pegalis & Harvey F. Wachsman, American Law of Medical Malpractice 2d §§ 7:7 and 7:12 (1992).

a proximate result of Kolbeck's negligence and that Austin is severely and permanently mentally retarded. Specifically, Sonja alleged that Kolbeck was negligent in failing to (1) order an immediate ultrasound on April 9, (2) recognize Austin's fetal distress and arrange for an emergency cesarean section on April 9, and (3) promptly respond to the ultrasound on April 10.

In his answer, Kolbeck denied that he was negligent or had caused Austin's injuries. Kolbeck affirmatively alleged that he had met the standard of care for physicians in his specialty in Omaha or similar communities. He also affirmatively alleged that Sonja and Mark had been negligent in caring for Sonja's illness, which had proximately caused Austin's condition and damages.

Sometime in early 2000, Sonja's counsel contacted Glass, a pediatric neurologist, to review Austin's case. In December 2000, Kolbeck's counsel conducted a discovery deposition of Glass.

A jury trial was conducted from October 4 through 20, 2004. At trial, Sonja was represented by attorneys other than the attorney who represented her at Glass' deposition. On October 19, Kolbeck moved to have Glass' deposition read into evidence. Sonja's counsel objected that he was not representing Sonja when Glass' deposition was taken and would not waive Sonja's right to cross-examination. Kolbeck's counsel stated that he had been unable to obtain Glass' presence for trial and offered the affidavit of a paralegal, averring that she had attempted to contact Glass on 2 different days, a week earlier.

Sonja's counsel argued that because defense counsel had not made a reasonable effort to obtain Glass' attendance, his deposition testimony was inadmissible under Neb. Rev. Stat. § 27-804(1)(e) (Reissue 1995). Sonja's counsel also argued that Sonja had not been afforded an opportunity to develop Glass' testimony because Kolbeck had taken the deposition strictly for discovery purposes.[3] The court overruled the objections.

The portion of Glass' deposition that was read into the record included Glass' opinion that (1) Austin's condition was directly related to Sonja's ketoacidosis; (2) damage leading to irreversible loss of function started in the late evening on April 9, 1997; (3) as Sonja's metabolism was restored to a normal range, the

---

[3] See § 27-804(2)(a).

impact of her condition on the fetus was lessened, which is why Austin's "Apgar scores" were not profoundly low when he was delivered the next morning; and (4) a delivery 2 hours earlier on the morning of April 10 would not have made any difference because by then, Sonja's condition had been restored to a more normal range.

On October 19, 2004, the same day Glass' deposition was read into the record, the court allowed Sonja to present rebuttal testimony from Rauscher, over Kolbeck's continuing objection. Rauscher, a document expert, testified that someone had altered two listed times on a document from another exhibit. The original exhibit is not part of this record, and Rauscher did not identify the document he had examined. Kolbeck contended that he was unfairly surprised by this expert and that Rauscher should therefore not be allowed to testify. The objection was overruled.

Also on October 19, 2004, the first jury conference was conducted. Instruction No. 6 advised the jury that it could not consider Sonja's acts or omissions in deciding whether Austin was entitled to damages. Kolbeck asked that the instruction "be modified to indicate to the jury that this in no way indicates that the acts or omissions of a parent cannot be a proximate cause of the injury to Austin." The court denied this request.

The next day, before closing arguments, Kolbeck requested that a supplemental jury instruction be given to the jury. Kolbeck argued that without the supplemental instruction, he could not argue that Sonja's actions were a proximate cause of Austin's injuries under instruction No. 6. The court agreed that while instruction No. 6 was correct, it needed modification. The court therefore allowed the supplemental instruction.

Supplemental instruction No. 6 advised the jury of Kolbeck's claim that Sonja's conduct was the only proximate cause of Austin's injuries. The court did not alter the original instruction No. 6, but renumbered it to supplemental instruction No. 7. The jury returned a unanimous verdict for Kolbeck.

## ASSIGNMENTS OF ERROR

Although Sonja assigns four errors in her brief, we restate them in accordance with those actually argued in her brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the

party asserting the error.[4] Sonja's assigned and argued errors are that the district court erred in (1) failing to properly instruct the jury; (2) failing to instruct the jury, on its own motion, on the issue of altered documents; and (3) allowing Glass' discovery deposition to be read into evidence after Sonja did not call Glass as a witness.

On cross-appeal, Kolbeck assigns that the trial court erred in allowing Rauscher to testify when Sonja failed to disclose him as an expert witness during discovery.

## STANDARD OF REVIEW

■ Whether a jury instruction given by a trial court is correct is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[5]

■ Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion.[6] An abuse of discretion in a ruling on the admissibility of evidence occurs when the trial judge's reasons or rulings are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[7]

## ANALYSIS

### Jury Instruction on Sole Proximate Cause

Sonja contends that the court's giving of supplemental jury instruction No. 6 was reversible error as a matter of law because the instruction (1) implied that there could be only a single proximate cause of Austin's injuries and damages; (2) distracted the jurors from a direct assessment of Kolbeck's negligence and was intended to put Sonja's acts or omissions before the jury as an intervening cause; (3) misstated Sonja's burden of proof; (4) directly conflicted with supplemental instruction No. 7 by imputing Sonja's negligence to Austin; and (5) improperly emphasized

---

[4] *State ex rel. Lemon v. Gale*, 272 Neb. 295, 721 N.W.2d 347 (2006).

[5] *Castillo v. Young*, 272 Neb. 240, 720 N.W.2d 40 (2006).

[6] *Curran v. Buser*, 271 Neb. 332, 711 N.W.2d 562 (2006).

[7] See *id.*

Kolbeck's defense by negating language in other instructions. Sonja does not contend that the evidence was insufficient to support a sole proximate cause instruction.

Kolbeck contends that the record is insufficient to review any of Sonja's assigned errors. Kolbeck also contends that because Sonja's claim was dismissed, she was a nonparty to the action and he was entitled to the "conduct of nonparty third person" pattern instruction in NJI2d Civ. 3.44. Supplemental instruction No. 6 followed the pattern instruction in NJI2d Civ. 3.44 and provided: "[Kolbeck] claims that Sonja Worth's conduct was the only proximate cause of Austin Worth's injuries. By doing so, [Kolbeck] is simply denying that his conduct was a proximate cause of the injury. Remember, [Sonja] must prove that [Kolbeck's] negligence was a proximate cause of the injury."

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[8] Jury instructions do not constitute prejudicial error if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence.[9] A litigant is entitled to have the jury instructed upon only those theories of the case which are presented by the pleadings and which are supported by competent evidence.[10]

Kolbeck argues that the second sentence of supplemental instruction No. 6 explained that he was simply denying that he was a proximate cause of Austin's injuries. The comments to NJI2d Civ. 3.44 clarify that this instruction is appropriate when the defendant claims that "the negligence of someone other than the defendant" is the sole proximate cause of the plaintiff's damages.[11]

[8] *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 713 N.W.2d 471 (2006).

[9] See *id.*

[10] *Shipler v. General Motors Corp.*, 271 Neb. 194, 710 N.W.2d 807 (2006).

[11] See, *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998) (Gerrard, J., concurring; White, C.J., and McCormack, J., join); *Weiseth v. Karlen*, 206 Neb. 724, 295 N.W.2d 103 (1980); *Steele v. Encore Mfg. Co.*, 7 Neb. App. 1, 579 N.W.2d 563 (1998).

■ A defendant's conduct is a proximate cause of an event if the event would not have occurred but for that conduct, but it is not a proximate cause if the event would have occurred without that conduct.[12] In actions filed on behalf of a child, this court has long held that " " "the negligence of a parent . . . cannot be imputed to an infant who is injured through the carelessness of another party." . . .' "[13] This rule has been applied not only in cases in which separate actions were filed by the parent and the child,[14] but also to actions filed solely on behalf of a child for personal injuries.[15]

■ But if a third person is the sole proximate cause of an innocent plaintiff's injuries, the plaintiff's recovery from a defendant is barred because the plaintiff's injuries are not attributable to the defendant's negligence. In *Pearson v. Schuler*,[16] a case dealing with the general rule that a driver's negligence may not be imputed to a passenger guest, the trial court instructed the jury as follows:

"If you find from a preponderance of the evidence in this case that . . . the driver of the automobile in which plaintiff's decedent was riding, at the time of the collision, was negligent, and that such negligence . . . was the *sole* proximate cause of the collision and resulting injuries to plaintiff's decedent, then your verdict will be in favor of the defendant . . . ."

On appeal, the deceased passenger's representative assigned error to this instruction. This court held that a passenger may not recover from a defendant for injuries sustained in a collision if the

---

[12] See *Shibata v. College View Properties*, 234 Neb. 134, 449 N.W.2d 544 (1989).

[13] *Owen, Administrator v. Moore*, 166 Neb. 226, 238, 88 N.W.2d 759, 767 (1958). Accord, Restatement (Second) of Torts § 488(1) (1965); NJI2d Civ. 3.25 and 3.26 (citing Nebraska cases).

[14] See *Owen, Administrator, supra* note 13.

[15] See, e.g., *Wilson v. Thayer County Agricultural Society*, 115 Neb. 579, 213 N.W. 966 (1927).

[16] *Pearson v. Schuler*, 172 Neb. 353, 361, 109 N.W.2d 537, 542 (1961) (emphasis in original).

negligence of the passenger's driver was the sole proximate cause of the accident. We stated:

> This instruction does not tell the jury that the negligence of [the driver] was imputed to the deceased [passenger]. It does state that if it found [the driver's] negligence was the sole proximate cause of the collision and resulting injuries to the . . . decedent, it should find for the defendant . . . . That amounts to instructing that if [the driver's] negligence was the sole cause of the injury then it should return a verdict for defendant. That [the driver's] negligence was not otherwise imputed to the plaintiff's deceased is made more clear by instruction No. 11 which reads in part as follows: ". . . if you find that the injuries to plaintiff's decedent were the proximate result of the negligence of [the defendant] and the driver . . . and that such injuries would not have occurred except for the negligence of each of said parties, it is no defense to this action for the defendant . . . to prove that the negligence of [the driver] was a contributing cause to the injuries sustained by plaintiff's decedent."[17]

*Pearson* demonstrates that the third person's negligence is not imputed to an innocent plaintiff by a sole proximate cause instruction. "The concept of sole proximate cause 'rests on the notion that some third party or other independent event was the sole cause of the plaintiff's injuries.'"[18] Here, Kolbeck did allege that Sonja's conduct was the sole proximate cause of Austin's injuries, but in medical malpractice cases, it is not necessary that the independent event or cause be the result of negligence.[19] Other courts, however, including this court, also require trial courts to give a limiting instruction that explains the plaintiff's right to recover if the plaintiff proves the defendant's

---

[17] *Id.* at 361-62, 109 N.W.2d at 542.

[18] *Estate of Long v. Broadlawns Med. Center*, 656 N.W.2d 71, 84-85 (Iowa 2002).

[19] See, e.g., *Nassar v. County of Cook*, 333 Ill. App. 3d 289, 775 N.E.2d 154, 266 Ill. Dec. 592 (2002). Compare *Whittington v. Nebraska Nat. Gas. Co.*, 177 Neb. 264, 128 N.W.2d 795 (1964).

negligence proximately caused or proximately contributed to the plaintiff's injuries.[20]

In *Barry v. Moore*,[21] this court held that a trial court must inform the jury of "the respective legal rights and liabilities of the [parties] in the event that negligence of the defendant was found which was the proximate cause which cause was proximately contributed to by [the third person]." Specifically, the trial court must explain that "[i]f [the defendant] was guilty of negligence which solely, or in concurrence with [the third person], or which proximately contributed to the accident, the plaintiff being in nowise responsible for it, the plaintiff was entitled to a recovery of her damages, if any, from him."[22]

Failure to give this instruction is reversible error, even if not requested, when the evidence raises a jury question as to whether (1) the defendant's negligence was the sole cause of the plaintiff's injuries, (2) a third person's negligence was the sole caused of the plaintiff's injuries, (3) negligence of the defendant and a third person concurred to cause the plaintiff's injuries; and (4) negligence of a third person or the defendant proximately caused the injuries, but the other's negligence contributed to the injuries.[23]

In other words, when the evidence is sufficient to raise a jury question as to whether a defendant's or a third person's negligence proximately caused or proximately contributed to a plaintiff's injuries, then a trial court must inform the jury that the plaintiff is entitled to recover damages, if any, from the defendant if the jury finds that the defendant is guilty of negligence which solely or in concurrence with a third person proximately caused or contributed to the plaintiff's injuries.

We have also applied this rule in a medical malpractice case when the plaintiff alleged that the defendant physician failed

---

[20] See, *Sullivan v. Edward Hosp.*, 335 Ill. App. 3d 265, 781 N.E.2d 649, 269 Ill. Dec. 852 (2002); *Nassar, supra* note 19. See, also, *Wheatley v. Heideman*, 251 Iowa 695, 102 N.W.2d 343 (1960).

[21] *Barry v. Moore*, 172 Neb. 57, 63-64, 108 N.W.2d 401, 405 (1961).

[22] *Id.* at 64, 108 N.W.2d at 405.

[23] See *id.* Accord *Zavoral v. Pacific Intermountain Express*, 181 Neb. 40, 146 N.W.2d 796 (1966).

to provide appropriate postoperative care and neither party alleged a third person's negligence had caused the plaintiff's injuries.[24] There was evidence at trial, however, that the plaintiff's mother had failed to follow instructions for the plaintiff's postoperative care and that another physician had failed to correctly diagnose the plaintiff's condition. Relying on *Barry*,[25] this court concluded that

> [u]nder the evidence, the erroneous failure of the district court to inform the jury as to how to treat the separate independent negligent acts of more than one person which combined to proximately cause the same injury, if the jury found such to have been the case, violated the district court's duty and prejudiced [the plaintiff].[26]

A court does not err in failing to give an instruction if the substance of the proposed instruction is contained in those instructions actually given.[27] Here, supplemental instruction No. 5 advised the jury in part that "[a] proximate cause need not be the sole cause. It may be a substantial factor or substantial contributing cause in bringing about the injury or harm." In addition, supplemental instruction No. 7 advised the jury that

> any act and/or omission of a parent does not relieve the Defendant of any liability the Defendant may have to the child for injuries or damages suffered by the child. In this case, if you find any acts and/or omissions on the part of Sonja L. Worth, caused or contributed to the injuries of Austin Worth[,] you must not consider them in deciding the damages, if any, to which the child is entitled.

In another guest passenger case, this court held that the trial court did not err by instructing the jury on the defendant's theory that the driver of the car in which the plaintiff was riding was the sole proximate cause of the plaintiff's injury when the court also instructed the jury that the negligence of the driver could not be

---

[24] See *McLaughlin v. Hellbusch*, 251 Neb. 389, 557 N.W.2d 657 (1997).

[25] *Barry, supra* note 21.

[26] *McLaughlin, supra* note 24, 251 Neb. at 395, 557 N.W.2d at 661.

[27] See *Roth v. Wiese*, 271 Neb. 750, 716 N.W.2d 419 (2006).

imputed to the plaintiff.[28] We conclude that, taken as a whole, the jury instructions were sufficient to ensure that Sonja's negligence did not operate to prevent Austin's recovery of damages if the jury concluded that Kolbeck's negligence was a concurring or contributing proximate cause of Austin's injuries.

Sonja's reliance on *Vieregger v. Robertson*,[29] is misplaced. In *Vieregger*, the parents brought a malpractice action on behalf of their son against the mother's two perinatologists for injuries their son sustained during delivery. The combination of the mother's diabetic condition and weight gain contributed to her unborn child's enlarged size, which caused delivery complications. At trial, the jury was instructed that the parents had the burden of proving that each physician had been negligent and that each physician's "'negligence was *the* proximate cause'" of the son's injuries.[30]

The Nebraska Court of Appeals was concerned that the instruction enhanced the parents' burden of proof by requiring them to prove that *each* doctor was *the* proximate cause of the child's injuries. That concern is not raised here. As in *Vieregger*, there were two alleged causes of Austin's injuries: Sonja's negligence and Kolbeck's negligence. But supplemental instructions Nos. 2 and 5 advised the jury that Sonja must prove Kolbeck's negligence was "*a* proximate cause of an injury to Austin" (emphasis supplied) and that this requirement could be satisfied if the jury found Kolbeck's negligence was "a substantial factor or substantial contributing cause in bringing about the injury or harm."

The Court of Appeals was also concerned that the instruction would improperly allow the jury to consider, in searching for *the* proximate cause, the mother's causative role in the development of her overly large unborn child. We agree that a pregnant woman's causative role in her unborn child's injuries cannot prevent her child's recovery from a negligent defendant unless the mother was the sole proximate cause of those injuries. But

---

[28] *Segebart v. Gregory*, 160 Neb. 64, 69 N.W.2d 315 (1955).

[29] *Vieregger v. Robertson*, 9 Neb. App. 193, 609 N.W.2d 409 (2000).

[30] *Id.* at 198, 609 N.W.2d at 414 (emphasis in original).

the defendants in *Vieregger* did not contend that the mother was the sole proximate cause of her unborn child's injuries. Here, the instructions were sufficient to allow Austin's recovery unless the jury concluded that Kolbeck's negligence, if any, was not a "substantial factor or substantial contributing cause in bringing about the injury or harm."

### JURY INSTRUCTION ON ALTERED DOCUMENT

In her second assignment of error, Sonja argues that the district court committed plain error in failing to instruct the jurors, sua sponte, that they could infer that the altered medical record document was unfavorable to Kolbeck.[31] Sonja admits that she did not request an adverse inference instruction. Nonetheless, Sonja contends that the trial court has a duty, whether requested or not, to instruct the jury on issues presented by the pleadings and evidence. That contention is correct,[32] but here, the record is insufficient to review an assignment of plain error.

Plain error may be asserted for the first time on appeal or be noted by an appellate court on its own motion.[33] Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[34]

Sonja argues that "[t]he Court was obligated to instruct the jury that had such an alteration not occurred, the office chart would have supported the testimony of both Sonja and Mark Worth as to the time of day that they contacted the Physician's office."[35] This argument concerns the testimony of Rauscher, the document expert who testified that two different listed times on a medical record document had been altered. Rauscher did not,

---

[31] See *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739 (8th Cir. 2004).

[32] See, e.g., *Nebraska Depository Inst. Guar. Corp. v. Stastny*, 243 Neb. 36, 497 N.W.2d 657 (1993).

[33] *Zwygart v. State*, 270 Neb. 41, 699 N.W.2d 362 (2005).

[34] *Id.*

[35] Brief for appellant at 23-24.

however, identify the document he believed had been altered. Sonja's counsel stated that the document was part of exhibit 36, but we do not have exhibit 36 or testimony regarding exhibit 36 in the record. Even the document from exhibit 36 about which Rauscher was testifying was not admitted into evidence. Finally, we do not have Mark or Sonja's testimony and do not know whether Kolbeck used the document to rebut their purported testimony about the times they contacted a physician.

█ Sonja's argument requires a factual inquiry into this record, which is wholly insufficient for this court to evaluate whether the absence of an adverse inference instruction prejudiced Sonja's case or led to a miscarriage of justice. It is incumbent on the party appealing to present a record which supports the errors assigned, and absent such a record, the decision of the lower court will be affirmed.[36] Because we cannot determine that the court's failure to give this instruction was error, the district court's ruling is affirmed.

### Admission of Glass' Deposition Testimony

In her third assignment of error, Sonja contends that the district court improperly allowed portions of Glass' deposition to be read into evidence. Sonja argues that the hearsay exception under § 27-804(2)(a) was not intended to allow for the admission of a discovery deposition because for that type of deposition, an attorney has less incentive to develop testimony than for a deposition to be used at trial. Sonja also argues that admitting discovery deposition testimony under the hearsay exception will have the chilling effect of requiring all attorneys to conduct a complete direct and redirect of all expert witnesses, prolonging the discovery phase and increasing costs to litigants. Finally, Sonja contends that the admission of a discovery deposition violates Neb. Rev. Stat. § 27-403 (Reissue 1995) because its probative value is substantially outweighed by the danger of unfair prejudice.

█ The burden to establish a declarant's unavailability is on the party seeking to introduce the evidence under § 27-804, and the determination of whether a witness is unavailable to appear at trial and give testimony is within the discretion of the

---

[36] *Ondrak v. Matis*, 270 Neb. 46, 699 N.W.2d 367 (2005).

trial court.[37] To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded.[38] As with Sonja's second assignment of error, the record is insufficient to review whether the admission of Glass' deposition testimony requires a new trial.

Erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact.[39] This court has specifically held that the erroneous admission of deposition testimony from a plaintiff's designated expert is not reversible error when there is other evidence to sustain the judgment.[40] Without a complete bill of exceptions, this court has no way of knowing whether Glass' deposition testimony was cumulative or whether other evidence sustained the judgment.

Also, Neb. Ct. R. of Discovery 32(a)(4) (rev. 2000) provides that "[i]f only part of a deposition is offered in evidence by a party, an adverse party may require him or her to introduce any other part which ought in fairness to be considered with the part introduced, and any party may introduce any other parts relevant to the issues." On this record, we also have no way of knowing whether Sonja supplemented the portion of Glass' testimony that was read into evidence by offering another part of his deposition testimony. In other words, even if the admission was error, we have no way of knowing from this record whether it was harmless error and cannot conclude that the district court erred.

Because of our determination that Sonja's assignments of error do not require a new trial, it is unnecessary for us to reach Kolbeck's assignment of error on cross-appeal.

---

[37] See *Maresh v. State*, 241 Neb. 496, 489 N.W.2d 298 (1992).

[38] *Perry Lumber Co. v. Durable Servs.*, 271 Neb. 303, 710 N.W.2d 854 (2006).

[39] *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006). See, also, *Behm v. Northwestern Bell Tel. Co.*, 241 Neb. 838, 491 N.W.2d 334 (1992); *Bailey v. Farmers Union Co-op Ins. Co.*, 1 Neb. App. 408, 498 N.W.2d 591 (1992).

[40] *Maresh, supra* note 37.

## CONCLUSION

We conclude the district court did not err in instructing the jury on Kolbeck's theory that Sonja was the sole proximate cause of Austin's in utero injuries. Taken together, the instructions were sufficient to ensure that Austin would recover from Kolbeck if the jury concluded that Kolbeck's conduct was a contributing or concurring proximate cause and that Sonja's concurring or contributing negligence would not prevent Austin's recovery.

AFFIRMED.