IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF CARLOS G.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF CARLOS G., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

CELIA R., APPELLANT.

Filed March 24, 2020.    No. A-19-804.

Appeal from the County Court for Hall County: ALFRED E. COREY III, Judge. Affirmed.

Grady C. Erickson, of Mayer, Burns & Koenig, for appellant.

Katherine J. Doering and Garrett L. Schroeder, Deputy Hall County Attorney, for appellee.

MOORE, Chief Judge, and RIEDMANN and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Celia R., mother of minor child Carlos G., appeals from the decision of the Hall County Court, sitting in its capacity as a juvenile court, adjudicating Carlos as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), after finding Celia neglected Carlos' education and that Carlos lacked proper parental care due to the faults and habits of Celia. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

In April 2019, the State filed a petition alleging Carlos was a minor child within the meaning of § 43-247(3)(a) because Carlos lacked proper parental care by reason of the fault or habits of Celia and because Celia neglected or refused to provide proper or necessary subsistence,

- 1 -

education, or other care necessary for Carlos' health, morals, or well-being. Both counts related to issues regarding Carlos' truancy and absenteeism. More specifically, the State alleged Carlos was failing four classes and had a "D" in a fifth class, had extended absences from school over a protracted period of time, and that Celia failed or refused to engage with Walnut Middle School to address those issues.

On July 2019, an adjudication hearing was held. Testimony was elicited from Julie Schlachter, a school social worker employed at Walnut Middle School; Julie Bruning, an educational and behavior consultant at Walnut Middle School; and Selena Wardyn, vice principal at Walnut Middle School.

JULIE SCHLACHTER

Schlachter, who had been employed at Walnut Middle School for the past 13 years, explained that part of her job as a school social worker is to work with students who have excessive school absences. Schlachter testified that when a student misses 10 percent or more of school, she meets with the student's parents and the student to learn why the student is missing school and how she can assist them to correct the problem. Sometimes an intervention is staged and the attendance problem resolves itself; otherwise, Schlachter meets with the parents and student to create an attendance plan which Schlachter then monitors. If the attendance plan fails to cure the problem, then an attendance hearing is held, which the parents and student can voluntarily attend. The attendance hearing process begins with sending letters to the parents, and if the letters fail to achieve the desired result, the next step involves contacting the student. The process allows Schlachter to work with the parents to decide how to address the problem of excessive absences.

Specific to this case, Schlachter testified that she worked with Carlos and his probation officer because Carlos was on probation for truancy from August to December 31, 2018. From August to December, Carlos missed 6 days of school. Because of Carlos' attendance issues, Schlachter set expectations for Carlos requiring him to obtain a doctor's note excusing him from school or requiring Carlos to check with the school nurse who would recommend Carlos either stay at school or leave to go home.

Schlachter then discussed a school record, marked as exhibit 4, which Schlachter explained was a document detailing Carlos' student attendance and report card. Schlachter testified she accesses and generates these types of reports from the school computer system on a daily basis to help her evaluate attendance related issues for the students she assists and that she generated this particular report for the purpose of the adjudication hearing. Celia's counsel objected to the court receiving pages four and five of exhibit 4 on the basis that Schlachter laid insufficient foundation for its receipt. The State then proceeded to elicit additional testimony relating to the report from Schlachter who explained she checks a student's grades when reviewing absences to ascertain

> what assignments are missing in relation to the days that the student's absent or how their grades are -- you know, whether they didn't do well on a test and how much time they missed during that -- how many days of school they missed during that chapter that the teacher was trying to teach them and what their tests looked like.

Schlachter noted she views these reports as a tool that assists her work with students. Celia's counsel again objected to the court receiving pages four and five of exhibit 4 based on lack of foundation and hearsay. The court received exhibit 4 in its entirety over the objections.

When asked about Carlos' total school absences for the 2018 to 2019 school year, Schlachter testified that by April 1, 2019, Carlos was absent 20 days with 5 of those days being unexcused absences. Schlachter explained she became concerned with Carlos' absences in the second semester because he had a number of absences after he completed probation.

Schlachter testified the school complied with Neb. Rev. Stat. § 79-209 (Reissue 2014) in that it documented verbal and written communications to Celia concerning Carlos' attendance, as well as documenting a September 6, 2018, meeting with Celia and Carlos and a social worker. The notes established that Celia failed to attend the fall and winter parent-teacher conferences, canceled a February 2019 meeting with school officials, did not answer phone calls, and was not responsive to offers of assistance from the school. Walnut Middle School attempted to implement a "Response to Intervention" (RTI) plan on March 7 to identify any barriers to Carlos' success and to create a plan to address those barriers.

Schlachter explained that she reached out to Celia three times during Carlos' seventh grade year and that the assistant principal and two of Carlos' teachers also tried contacting Celia all to no avail. One of the notes Schlachter wrote stated:

> In kindergarten Carlos missed 20 days of school, first grade he missed 20, second grade he missed 12, third grade he missed 23, fourth grade he missed 23, fifth grade he missed 20, sixth grade he missed 37. At the time of this, Carlos was on probation for truancy, and in seventh grade he's missed 20 days of school so far.

Schlachter explained Carlos' school absences concerned her because, throughout his school career, he had missed 175 academic days, which is the equivalent to one academic school year. Schlachter also testified that Carlos' grades have declined during his sixth grade and seventh grade years. When asked whether the amount of absences accumulated during his seventh grade year was in Carlos' best interests, Schlachter responded that it was not in his best interests because "missing out on a lot of academics" will make it more difficult for him to move forward as academics "builds" on each other. Schlachter testified that at the time of referral, Carlos had one "D" and four "F"s. Despite his grades, Schlachter acknowledged Carlos was socially promoted, meaning Walnut Middle School does not hold students back from the eighth grade due to their grades.

JULIE BRUNING

Bruning, who has been employed at Walnut Middle School for the past 6 years, explained that her job as an educational and behavior consultant involves engaging with students who have learning or behavioral challenges and coordinating special educational services for them. Bruning testified that students who have "missed too much school" are not given a formal evaluation to assess whether they have a learning disability because it is difficult to make that determination if there has been a lack of opportunity to learn. Bruning uses Measures of Academic Progress (MAP) testing as a tool to monitor student progress over a period of time. Carlos' MAP scores showed that during the seventh grade year, his scores dipped and that Carlos eventually ended the year scoring only one point higher than his MAP score at the beginning of the year. Overall, Bruning

testified Carlos' MAP scores have been historically low compared to his peers, and that while his MAP testing shows he has made some improvement, he is below average. Bruning explained that sometimes Carlos tests near average in his MAP scores and sometimes he tests below average. Bruning indicated this pattern suggests Carlos does not have a learning disability. Bruning testified that at one point, school officials initiated an RTI plan regarding Carlos. Bruning testified Celia did not participate in the RTI plan and that due to the high number of Carlos' absences, school officials were prevented from completing the RTI plan. Bruning explained that school officials encouraged Carlos to enroll in intervention classes for specific courses but were met with resistance from Celia. Specifically, Celia requested permission for Carlos to continue with orchestra which was allowed on the condition that Carlos would attend math intervention after school.

SELENA WARDYN

Wardyn, vice principal at Walnut Middle School, explained that based on her experience, lack of attendance affects students in several areas, including academic achievement. Wardyn expounded that every student, regardless of innate ability, will be negatively impacted by lack of school attendance. Wardyn testified that school absences, whether excused or unexcused, affect the teacher-student dynamic explaining, "it's not just about teacher-directed instruction, it's about the teachers guiding the learning, monitoring the students on what they're learning, and then intervening as needed to progress them. If they're not there, [teachers] can't monitor what they're learning." Concerning special education, Wardyn explained that based on her special education training, identifying a student as having a learning disability when the student has a school attendance problem would be considered unethical. Wardyn testified that an Individualized Education Plan (IEP) was not initiated for Carlos because his absenteeism would impede that process and a parent must be involved to finalize the IEP process.

COURT ORDER

Following the hearing, the court issued an order finding Carlos came within the meaning of § 43-247(3)(a) due to the fault or habits of Celia and that Celia neglected or refused to provide necessary subsistence, education, or other care necessary for Carlos' health, well-being, or morals. In reaching that determination, the court found Carlos' school attendance history, his grades, and Celia's failure to work with school officials to address Carlos' absenteeism problem were sufficient facts to support its determination that Carlos was a child within the meaning of § 43-247(3)(a) by a preponderance of the evidence. The court placed legal custody of Carlos with the Department of Health and Human Services (DHHS) but kept physical custody with Celia. Celia appeals from this order.

ASSIGNMENTS OF ERROR

Celia argues, restated and renumbered, that the county court erred in (1) receiving exhibit 4 in its entirety over Celia's "foundation" objection; (2) overruling Celia's objection to a best interests question of the State's witness, Schlachter; and (3) adjudicating Carlos due to the insufficiency of the evidence and misapplication of § 43-247(3)(a).

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings. *In re Interest of Robert W.*, 27 Neb. App. 11, 925 N.W.2d 714 (2019). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016); *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

## ANALYSIS

### EVIDENTIARY FOUNDATION

Celia first argues the court erred in receiving pages four and five of exhibit 4 because Schlachter, a social worker with Walnut Middle School, failed to lay proper foundation for those pages, which contained Carlos' attendance record, academic grades, and performance level. More specifically, Celia contends Schlachter did not possess "the necessary teaching credentials to lay the proper foundation about the teaching grades of the juvenile . . . . Because Ms. Schlachter did not write these reports, [Celia] asserts that the trial court erred in receiving Exhibit 4 in its entirety." Appellant's brief at 19.

The rules of evidence apply at adjudication hearings. Neb. Rev. Stat. § 43-279(1) (Reissue 2016); *In re Interest of Elijah P. et al.*, 24 Neb. App. 521, 891 N.W.2d 330 (2017).

After hearing the evidence, the court shall make a finding and adjudication to be entered on the records of the court as to whether the allegations in the petition have been proven by a preponderance of the evidence in cases under § 43-247(3)(a). Neb. Rev. Stat. § 43-279.01(4) (Reissue 2016); *In re Interest of Chloe P.*, 21 Neb. App. 456, 840 N.W.2d 549 (2013).

In response to Celia's objection, the State elicited testimony from Schlachter that pages four and five of exhibit 4 contained attendance detail and Carlos' report card, which records she accesses and generates from the school computer system on a daily basis in order to evaluate attendance related matters for students with whom she is working. The State then argued that exhibit 4 is a business record, which is a well-recognized exception to the hearsay rule and should be admitted into evidence for that purpose.

Although it is a little difficult to understand the exact nature of Celia's objection here, we take her objection to mean that Schlachter either was not the proper person to lay foundation for this exhibit or the State failed to satisfy its burden of establishing foundation for this record under the three part test set forth in *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). In *In re Interest of Cole J.*, 26 Neb. App. 951, 957, 925 N.W.2d 365, 370 (2019), we stated:

> The party seeking to admit a business record under § 27-803(5)(a) bears the burden of establishing foundation under a three-part test. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). First, the proponent must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities. *Id*. Second, the proponent must establish that the record was made as part of a regular business practice at or near the time of the event recorded. *Id*. Third, the proponent must authenticate the record by a custodian or other qualified witness. *Id*.

Although our review of caselaw demonstrates records of this nature are commonly kept by schools and produced as business records in the course of day to day activities in order to keep track of student conduct and performance, we need not determine whether Schlachter provided adequate foundation for the admission of pages four and five of exhibit 4 in this case. Our Supreme Court has previously held that, the "[e]rroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact." *Worth v. Kolbeck*, 273 Neb. 163, 177, 728 N.W.2d 282, 295 (2007).

Here, the contents of exhibit 4 to which Celia objects, namely the attendance records and grades of Carlos, were separately admitted into the record, without objection, at different times and in different places throughout the trial. For instance, Schlachter separately testified, without objection, that Carlos was failing in four classes and has a "D" in a fifth class and testified to the number of school absences. In addition, exhibit 2, page 3, also admitted without objection, references the number of days Carlos was absent from school and the number of those absences which were considered "unexcused." We hold that, because the record contains numerous examples of evidence cumulative of the evidence Celia argues should have been excluded, any such error in admitting the contents of exhibit 4 would be harmless and would not require reversal. This assignment fails.

OPINION OF SOCIAL WORKER

Celia next contends the court erred in allowing Schlachter to offer an opinion that Carlos' excessive number of school absences was not in Carlos' best interests. In support of that contention, Celia argues that Schlachter was not qualified to issue that opinion and that it was improper opinion testimony because it embraced an ultimate issue to be decided by the trier of fact.

Neb. Rev. Stat. § 27-702 (Reissue 2016) provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010).

After reviewing the record, it is clear that Schlachter testified that she was a trained social worker who was retained by the school specifically to deal with cases of excessive absenteeism and poor academic performance. We see no abuse of discretion by the court in concluding that Schlachter's described expertise was sufficient to allow her to provide an informed judgment on the connection between absenteeism and the student's performance. Further, Neb. Rev. Stat. § 27-704 (Reissue 2016) provides that, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Due to Schlachter's background, experience, and specific knowledge of Carlos and his academic performance, we hold the court did not abuse its discretion in allowing Schlachter to

testify that Carlos' excessive absences from school were not in his best interests. Thus, this assignment of error fails.

SUFFICIENCY OF EVIDENCE

Celia finally argues the court erred in adjudicating Carlos under § 43-247(3)(a) and makes three arguments in support of that contention. First, Celia contends the compulsory education laws do not apply in educational neglect cases pursued under § 43-247(3)(a). Second, Celia argues the State failed to meet its burden of proof that she neglected Carlos' education. Third, Celia asserts school officials were going to "socially promote" Carlos from the seventh grade to the eighth grade regardless of his academic performance suggesting Carlos was not at a risk of harm for educational neglect due to Celia's faults or habits. We address those arguments independently.

As to Celia's first contention that the compulsory education laws do not apply in educational neglect cases, we note a similar argument was raised in *In re Interest of Laticia S.*, 21 Neb. App. 921, 844 N.W.2d 841 (2014). In *Laticia S.*, the county attorney opted to pursue adjudication under § 43-247(3)(a) rather than criminally charging the child's parents after discovering that the child had missed in excess of twenty days in the current school year, demonstrated a pattern of similar behavior in the past, and where it appeared that the child's academic performance was suffering. In analyzing the appropriateness of pursuing adjudication under § 43-247(3)(a) in connection with truancy, our court held:

> The purpose of the adjudication phase is to protect the interests of the child. *In re Interest of Cornelius K.*, 280 Neb. 291, 785 N.W.2d 849 (2010). At the adjudication stage, in order for a juvenile court to assume jurisdiction of a minor child under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence, and the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Cornelius K.*, *supra*. Section 43-247(3)(a) states that the juvenile court shall have jurisdiction of "[a]ny juvenile . . . whose parent . . . neglects or refuses to provide proper or necessary subsistence, *education*, or other care necessary for the health, morals, or well-being of such juvenile." (Emphasis supplied.)

*In re Interest of Laticia S.*, 21 Neb. App. at 928, 844 N.W.2d at 848. We observed, "§ 43-247(3)(a) establishes the juvenile court's jurisdiction over [a child], while [Neb. Rev. Stat.] §§ 79-201 and 79-210 [(Reissue 2014)] make [the child's] parents or legal guardians culpable for her truancy. The county attorney was free to decide whether to proceed utilizing the juvenile code or the compulsory education laws." *In re Interest of Laticia S.*, 21 Neb. App. at 927-28, 844 N.W.2d at 848.

Ultimately, we concluded Laticia was a child under § 43-247(3)(a) in that the State proved by a preponderance of the evidence that due to Laticia's excessive truancy and the facts of that case, Laticia's parents were neglecting her education. Accordingly, like in *Laticia S.*, the State was free to proceed utilizing the juvenile code to address Carlos' excessive truancy. In connection therewith, it then became the State's burden to prove that Carlos was a child within the meaning of § 43-247(3)(a) by a preponderance of the evidence.

Celia next argues that unlike *Laticia S.*, the State failed to satisfy its burden of proof. Stated differently, Celia argues the evidence was not sufficient to establish that Carlos was a child within the meaning of § 43-247(3)(a) as pled by the State.

At the adjudication hearing in the present action, testimony established that Carlos had missed twenty days of school with five of the absences being unexcused and that this was a pattern with Carlos for numerous years. Schlachter testified it was not in Carlos' best interests to miss an excessive quantity of school and pointed to Carlos' poor academic performance as evidence thereof. Schlachter explained she attempted to contact Celia three times during the course of Carlos' seventh grade school year and that the assistant principal and two of Carlos' teachers also attempted to contact Celia regarding Carlos' absences. Because of Celia's failure in responding, Schlachter was never able to work with Celia in order to address the problem. Bruning testified school officials tried to offer services to Carlos in order to address his absenteeism problem and poor academic performance but that the interventions could not be completed because of his absenteeism. Bruning also testified Celia failed to cooperate with school officials to take advantage of these intervention programs.

In the wake of this evidence, Celia argues that she has a fundamental and constitutional right to raise her child as she sees fit and that there was no evidence that her actions were the sole reason for Carlos' educational neglect, and that due to the child's low cognitive ability, the risk of harm from absenteeism is minimal. We find none of these arguments persuasive. The purpose of adjudication is to protect the child, not the parent. *In re Interest of Laticia S., supra*. Parents do not have a right to parent in a way that causes their children harm. *In re Interest of Darius A.*, 24 Neb. App. 178, 884 N.W.2d 457 (2016). Students with low educational abilities are entitled to education, and parents must provide for their educational needs. *Id*. After reviewing the record, we find that similar to *In re Interest of Laticia S.,* the State satisfied its burden in proving Carlos was a child within the meaning of § 43-247(3)(a) because Celia has neglected his education.

For completeness, we also analyze the court's adjudication of Carlos under § 43-247(3)(a) which alleged that Carlos lacked proper parental care by reason of the fault or habits of Celia. The Nebraska Supreme Court recently stated:

[W]hether a juvenile "lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian" is a two-step inquiry. The first step is to determine if the juvenile is lacking proper parental care, whether such care is being provided by a parent, a guardian, or a custodian. If the juvenile is not lacking that type of care (and . . . there is no definite risk of harm), adjudication under this provision of § 43-247(3)(a) is improper. If, on the other hand, the juvenile is lacking such care, the court should proceed to the second step: Does that condition result from the fault or habits of the juvenile's parent, guardian, or custodian? If the answer to that question is also yes, then the juvenile court should take jurisdiction of the juvenile and proceed to a proper disposition.

*In re Interest of Jeremy U. et al.*, 304 Neb. 734, 748, 936 N.W.2d 733, 744-45 (2020). With this framework in mind, we engage in a de novo review of the current action.

Concerning the faults or habits of Celia, we note that Carlos has had attendance problems every school year since kindergarten. During his seventh grade year, he was considered truant and placed on probation due to his absences. After he was removed from probation on December 31,

2018, Carlos missed ten days of school by February 19, 2019. Schlachter testified it was not in Carlos' best interests to miss the amount of school that he has because he is "missing out on a lot of academics" that will make it more difficult for him to go forward in that academics "build" on each other. This was reinforced by Carlos' MAP testing scores, which showed he has historically tested low compared to his peers and remains below average. While there was some discussion that Carlos' poor academic performance might be caused by a learning disability, Wardyn testified that it would be unethical to make that determination while he has an attendance problem. This highlights the school officials' dilemma in trying to address Carlos' needs but being prevented from exploring all possibilities due to his absenteeism problem, which Celia has not helped to correct. Based on the record establishing Celia's failure to ameliorate Carlos' school absences, it is evident Carlos lacks proper parental care. Furthermore, the record shows school officials attempted to notify Celia of the problem and work to correct the issue, but she chose not to cooperate with them leading us to conclude the problem resulted from the fault or habits of Celia. Therefore, we find Carlos was properly adjudicated under § 43-247(3)(a)(3) due to lacking proper parental care by reason of the fault or habits of Celia.

Turning to Celia's third argument, Celia argues that Carlo's attendance record posed no risk of harm to Carlos because school officials were going to "socially promote" Carlos from the seventh grade to the eighth grade regardless of his academic performance. This assignment can only be described as a classic non-sequitur. It simply does not follow that because Carlos will be socially promoted from seventh grade to eighth grade despite his chronic truancy and poor academic performance that he has not been harmed by his absences. The record herein makes clear that Carlos has been harmed by his excessive truancy and is a child within the meaning of § 43-247(3)(a). This assignment of error fails.

CONCLUSION

For the reasons previously articulated, we affirm the court's order adjudicating Carlos as it concerns Celia.

AFFIRMED.