IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KELLY H. V. LUKE M.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


KELLY H., APPELLEE,

V.

LUKE M., APPELLANT.


KELLY H. ON BEHALF OF DOMINIQUE M., APPELLEE,

V.

LUKE M., APPELLANT.


KELLY H., APPELLEE,

V.

ASHLEY H., APPELLANT.


KELLY H. ON BEHALF OF DOMINIQUE M., APPELLEE,

V.

ASHLEY H., APPELLANT.


Filed June 7, 2016.   Nos. A-15-961 through A-15-964.


Appeal from the District Court for Clay County: VICKY L. JOHNSON, Judge. Affirmed in part, and in part reversed and remanded with directions.

Steven B. Fillman and Lisa M. Meyer for appellants.

Stephanie Flynn, of Stephanie Flynn Law Office, P.C., L.L.O., for appellee.


- 1 -

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Luke M. and Ashley H. appeal from the Clay County District Court's decision to grant protection orders against them and in favor of Dominique M., Luke's son, and Kelly H., Dominique's mother. Specifically, in case No. A-15-961, Luke appeals from a domestic abuse protection order entered in favor of Kelly and, in case No. A-15-962, he appeals from a domestic abuse protection order entered in favor of Dominique. In case No. A-15-963, Ashley appeals from a harassment protection order entered in favor of Kelly, and, in case No. A-15-964, she appeals from a domestic abuse protection order entered in favor of Dominique. The four appeals were consolidated for briefing in this court, and we consolidate them for opinion as well.

For the reasons set forth herein, we affirm the district court's decision to grant the domestic abuse protection orders against Luke and in favor of Kelly and Dominique. In addition, we affirm the court's decision to grant the domestic abuse protection order against Ashley and in favor of Dominique. However, we reverse the court's decision to grant the harassment protection order against Ashley and in favor of Kelly, and we remand with directions to vacate that order.

## II. BACKGROUND

### 1. PARTIES

This appeal involves Luke; Luke's girlfriend, Ashley; Luke's son, Dominique; and Dominique's mother, Kelly. At the time the protection order proceedings were initiated, Dominique was 9 years old. Luke was Dominique's custodial parent and had been in that role for Dominique's "whole life." Luke and Ashley had been living together for approximately 6½ years, or since Dominique was about 3 years old. Also living in Luke and Ashley's home was Ashley's 11-year-old daughter and Luke and Ashley's two sons, aged 7 and 5.

### 2. PETITIONS AND AFFIDAVITS FOR PROTECTION ORDERS

On the night of August 28, 2015, Kelly picked up Dominique for her scheduled parenting time. While Kelly was driving Dominique to her home, he disclosed to her that he had witnessed Ashley hit her 11-year-old daughter. As a result of Dominique's disclosure, Kelly contacted law enforcement and Dominique was interviewed about what was occurring in Luke and Ashley's home. Based on the information police received during that interview, photographs were taken of Dominique's body. These photographs depict some significant bruising on Dominique, particularly on his lower back.

A juvenile court case was then initiated to investigate the allegations of abuse occurring in Luke and Ashley's home. Dominique was placed in the legal custody of the Department of Health and Human Services (DHHS) and placed in the physical custody of Kelly. As a part of the juvenile court case, DHHS discussed permitting Luke to have supervised visitation with Dominique. This visitation never occurred, however, because on September 1, 2015, Kelly filed four separate petitions and affidavits for domestic abuse protection orders pursuant to Neb. Rev. Stat. § 42-924 (Cum. Supp. 2014).

In case No. A-15-961, Kelly filed a petition and affidavit for a protection order against Luke and on behalf of herself. In this petition and affidavit, Kelly alleged that Luke "made several death threats towards [her]" on August 30 and 31, 2015. Kelly next alleged that over the years, Luke has repeatedly threatened to kill her both in person and via text messages. Kelly indicated that she has previously contacted the police about these threats, but the threats have not stopped.

In case No. A-15-962, Kelly filed a petition and affidavit for a protection order against Luke and on behalf of Dominique. In this petition and affidavit, Kelly alleged that Luke has physically abused Dominique as recently as August 27, 2015. The allegations indicated that Luke beat Dominique with his fists and with a belt. Luke threatened to hurt Kelly if Dominique told anyone about the abuse. And, after Dominique told Kelly what was occurring, Luke threatened to come after Dominique.

In case No. A-15-963, Kelly filed a petition and affidavit for a protection order against Ashley and on behalf of herself. In this petition and affidavit, Kelly alleged that Ashley has threatened to "come after me and kill me" on several occasions when Kelly went to Luke and Ashley's home to pick up Dominique. Kelly also alleged that Luke and Ashley have told Dominique that if he ever reported his abuse, they would "slice [her] throat."

In case No. A-15-964, Kelly filed a petition and affidavit for a protection order against Ashley and on behalf of Dominique. In this petition and affidavit, Kelly alleged that Ashley has physically abused Dominique, including beating him with a metal belt and with her fists; holding him down on the floor and choking him; dragging him up a staircase by his ears and hair; and prohibiting him from eating or showering for days at a time. In addition, Kelly alleged that Dominique has witnessed Ashley physically abusing Ashley's 11-year-old daughter.

On September 2, 2015, the district court entered ex parte domestic abuse protection orders against Luke and in favor of Kelly and Dominique and against Ashley and in favor of Dominique. In addition, the district court entered an ex parte harassment protection order against Ashley and in favor of Kelly after finding that "[a]lthough [Kelly] requested a domestic abuse protection order, the facts support issuance of a harassment order." Luke and Ashley requested a hearing on the orders and that hearing was scheduled for September 18, 2015.

### 3. HEARING

At the September 18, 2015, hearing, Luke and Ashley denied that they have ever abused Dominique, or harmed him in any way. In addition, they denied ever threatening to harm Kelly. Luke testified that he believed that the bruising seen on Dominique in late August 2015 was the result of a "tackle football game" he played with his friends. Ashley testified that any scars Dominique has on his body are most likely from his interactions with the family dog. Both Luke and Ashley insinuated through their testimony that they believed that Kelly had coached Dominique to lie about being abused by Luke and Ashley so that Kelly could obtain custody of Dominique. In fact, Luke testified that prior to the allegations of abuse, Dominique was acting manipulative and would threaten to tell Kelly if he was disciplined by Luke or Ashley or if he did not get his way at their home.

Ashley's 11-year-old daughter corroborated Luke's and Ashley's testimony that there was no abuse in the home. She indicated that Dominique has been spanked, but that prior to his removal from their home, Dominque was "happy" and normal.

- 3 -

Luke and Ashley also presented the testimony of other witnesses who generally indicated that Dominique appeared well cared for and that they never noticed any signs that he was being abused in his home. Dominique's third grade teacher testified that she never observed any bruises or injuries on Dominique and that he appeared to be a happy, well-behaved child. However, she also noted that Dominique was only in her class for 10 days before he was removed from Luke's home and, as a result, switched schools.

A DHHS caseworker who investigated Dominique's abuse allegations testified that based upon her observations of Dominique's interviews, she believed that he may have been coached in how to talk about the abuse. She stated that she did not discover any evidence to suggest that the other children in Luke and Ashley's home were being abused. However, the DHHS caseworker indicated that she was not involved with Dominique's case for very long because of the imposition of the protection orders. She also stated that Luke and Ashley have been investigated regarding child abuse on previous occasions.

The mother and grandmother of one of Dominique's friends also testified about their observations of Dominique. Both indicated that they saw Dominique on multiple occasions during the six months preceding his removal from Luke and Ashley's home and neither observed any bruises or injuries on him during that time. In addition, they both indicated that Dominique appeared to be a "normal" kid.

Kelly and Dominique also testified at the September 18 hearing, and presented testimony which greatly conflicted with the evidence presented by Luke and Ashley. Dominique testified, in chambers, that he was repeatedly abused by Luke and Ashley. He said that both Luke and Ashley have repeatedly subjected him to physical abuse which has resulted in injuries. Dominique stated that when Luke is angry or "drinks too much beer," he hits Dominique and his siblings "hard" with his fists or with a belt. In addition, Luke has "choked" Dominique and his siblings. Dominique said that Ashley hits him and that if he cries, she will hit him harder. Dominique also stated that Ashley has pulled him up the stairs by his hair and has grabbed him by the arm "really hard." Ashley has also told Dominique and his siblings that she will "kill" them. Dominique indicated that he has witnessed Ashley abusing his 11-year-old sister.

Dominique testified that he has scars on his stomach and his chest from getting hit with a belt. Dominique indicated that the bruises which were photographed by police in August 2015 were not the result of a tackle football game, but were the result of Luke hitting him and elbowing him on a family vacation a couple of weeks prior to the photographs being taken. Dominique said that he is afraid that if he returns to Luke and Ashley's home, he will be hurt again. Dominique indicated that Luke told him if he ever said anything about "the hitting stuff," that Luke will slice Kelly's throat.

Kelly testified that Luke has threatened her on various occasions over the last 7 or 8 years. The most recent, in-person, threat occurred on August 1, 2015. On that date, Luke became frustrated when Kelly told him she would not give him additional money to buy Dominique shoes. Luke told her that her husband could not protect her forever and that he knew how to find her alone. In addition, Luke threated to slice her throat with a knife. Kelly said that as a result of Luke's threats, she is fearful for her safety and the safety of her family. In fact, Kelly indicated that she has made it a point to never be alone with Luke.

Kelly also testified that Ashley has threatened her on multiple occasions when Kelly would go to Luke and Ashley's home to pick up Dominique for her parenting time.

## 4. DISTRICT COURT'S ORDERS

After the hearing, the district court entered domestic abuse protection orders against Luke and in favor of Kelly and Dominique. The court also entered a domestic abuse protection order against Ashley and in favor of Dominique and a harassment protection order against Ashley and in favor of Kelly. In each of these orders, the court indicated that it found Kelly and Dominique to be more credible than Luke and Ashley.

The protection orders prohibit Luke and Ashley from having any contact with Kelly or Dominique. The orders remain in effect until September 2, 2016.

## III. ASSIGNMENTS OF ERROR

Luke and Ashley's brief on appeal does not comply with the briefing rules established by the Nebraska Supreme Court. Neb. Ct. R. App. P. § 2-109(D)(1) requires a separate section for assignments of error, designated as such by a heading, and also requires that the section be located after a statement of the case and before a list of controlling propositions of law. Luke and Ashley's brief does not set forth a separate section containing their assignments of error between the statement of the case and the propositions of law. Rather, in the brief's table of contents, Luke and Ashley include their assertions of error beneath the "Argument" heading. These assertions include that the district court erred in admitting as substantive evidence the petitions and affidavits to obtain domestic abuse protection orders filed by Kelly; failing to have Kelly present her evidence first at the September 18, 2015, hearing; failing to admit into evidence a photograph of one of Dominique's friends; and finding sufficient and credible evidence to warrant granting each of the protection orders.

The Nebraska Supreme Court has addressed briefing inconsistencies similar to the circumstances of this case and stated that it has long been the policy that to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *City of Gordon v. Montana Feeders, Corp.*, 273 Neb. 402, 730 N.W.2d 387 (2007). The Supreme Court has also stated, "Assignments of error consisting of headings or subparts of argument do not comply with the mandate of § 2-109(D)(1)(e)." *In re Interest of Jamyia M.*, 281 Neb. 964, 977, 800 N.W.2d 259, 269 (2011).

In situations where an appellant has failed to file a brief which conforms to the court's rules, we may consider the case as one in which no brief was filed, or alternatively, we may examine the proceedings for plain error. See *id*. Given the nature of these proceedings, we will consider whether the district court committed plain error.

## IV. STANDARD OF REVIEW

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of Jamyia M.*, *supra*.

## V. ANALYSIS

### 1. ADMISSION OF PETITIONS AND AFFIDAVITS INTO EVIDENCE

At the show cause hearing, the district court admitted into evidence, over Luke's and Ashley's objection, the petitions and affidavits to obtain a protection order which were filed by Kelly in each of the four cases. Luke and Ashley argued at the hearing, as they do now on appeal, that the petitions and affidavits should not be considered as substantive evidence because they contain hearsay statements. Specifically, they point to portions of the petitions and affidavits which contain statements made by Dominique to Kelly, of which Kelly has no personal knowledge.

At a show cause hearing in protection order proceedings, a prima facie case may be established by a form petition and affidavit, which has been properly admitted into evidence. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). The petition and affidavit is routinely admitted into evidence when offered. In fact, this court has reminded parties of the importance of formally offering into evidence the petition and affidavit filed in a protection order case. See, e.g., *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

Although the petitions and affidavits for a protection order are routinely admitted as substantive evidence at protection order hearings, we recognize that this case is somewhat unique. Here, Kelly filed two of the petitions and affidavits on behalf of Dominique. The allegations in those petitions and affidavits were based upon information that Kelly received from Dominique, not from information that Kelly personally witnessed. As such, the petitions and affidavits filed on behalf of Dominique arguably did contain hearsay. However, even though the petitions and affidavits filed on behalf of Dominique contained hearsay statements, we conclude that any error committed by the district court in admitting the statements into evidence was harmless.

A protection order is analogous to an injunction. See *Linda N. on behalf of Rebecca N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Abboud v. Lakeview, Inc.*, 237 Neb. 326, 466 N.W.2d 442 (1991). Accordingly, a party seeking to continue a protection order, after the entry of an ex parte order, must prove by a preponderance of the evidence the allegations in his or her petition and affidavit.

Dominique testified at the show cause hearing concerning the physical and emotional abuse he had suffered at the hands of Luke and Ashley. This testimony constitutes direct evidence of the allegations of abuse contained in the petitions and affidavits. Accordingly, even if the district court erred in admitting into evidence any hearsay statements contained in the petitions and affidavits, such error was cured through the testimony of Dominique. Erroneous admission of evidence is harmless error and does not require reversal if the evidence is cumulative and other relevant evidence, properly admitted, supports the finding by the trier of fact. *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007). We find no plain error in the district court's decision to admit into evidence the petitions and affidavits.

### 2. ORDER OF PRESENTATION OF EVIDENCE AT HEARING

At the start of the show cause hearing, the district court called Kelly to testify. The court specifically asked her whether "the information on the petition and affidavits in each case [is] still true and correct?" Kelly responded that the information was still correct and that she desired the

protection orders to remain in place. The court then called Luke to testify. As the court began to question Luke, his counsel interrupted and asked, "is there any way we can take some of the other witnesses first?" The court declined this request and continued to question Luke, asking him whether any of the allegations contained within the petitions and affidavits were true. Luke indicated that none of the allegations were true. Next, the court called Ashley to testify and asked her whether any of the allegations contained within the petitions and affidavits were true. Ashley testified that no part of the allegations were true.

After the court questioned these three witnesses, it stated, "All right. Now, the issues are framed." The court asked Luke's counsel if he had any questions for his client and informed counsel that Luke "is the first witness." Prior to Luke testifying, Kelly's counsel offered into evidence the petitions and affidavits filed in each case. Ultimately, the court admitted each of the petitions and affidavits into evidence. Luke's counsel then proceeded to question Luke about the allegations in the petitions and affidavits. After Luke testified, his counsel called multiple witnesses to testify on Luke's and Ashley's behalf. Then, Kelly's counsel was given the opportunity to present evidence.

On appeal, Luke and Ashley argue that the district court erred "by forcing [Luke] to present evidence first." Brief for appellant at 20. They assert that Kelly should have presented her evidence first because it was her burden to prove the allegations in the petitions and affidavits.

As noted previously, in a protection order proceeding, a prima facie case may be established by a form petition and affidavit, when it is properly admitted into evidence. See *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). In this case, before Luke and Ashley were asked to put on their evidence, the court admitted into evidence the petitions and affidavits filed in each case. In addition, the court called Kelly to testify, under oath, that the allegations in the petitions and affidavits were still true. At this point, a prima facie case establishing the need for the protection orders was established. The burden then shifted to Luke and Ashley to contest the allegations contained within the petitions and affidavits.

We conclude that the district court did not commit plain error in establishing the procedures for the show cause hearing. Kelly established a prima facie case with the admission of the petitions and affidavits. The burden then properly shifted to Luke and Ashley to disprove the allegations in the petitions and affidavits. Luke and Ashley's assertion that they were "forced" to present their evidence first is not an accurate account of how the hearing was conducted.

3. FAILURE TO ADMIT EXHIBIT 5

During the show cause hearing, Luke offered into evidence exhibit 5, which was a photograph of one of Dominique's friends. Specifically, the photograph displayed some bruising on the stomach of Dominique's friend. The photograph was taken a few days after Dominique reported to Kelly that he was being abused and consequently, a few days after police took photographs of the bruising on Dominique's body. Kelly objected to the admission of exhibit 5, arguing that it was not relevant. In response to Kelly's objection, Luke argued that the photograph was relevant because both Dominique and his friend had played in a "tackle football game" shortly before the photographs of each of their bruises were taken. Luke asserted that if the tackle football game was rough enough to cause bruising to Dominique's friend, then the game could also explain the bruising on Dominique's body. The district court sustained Kelly's objection and did not admit

exhibit 5 into evidence. On appeal, Luke and Ashley argue that the district court erred in failing to admit exhibit 5 into evidence.

Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Rev. Stat. § 27-401 (Reissue 2008). Evidence that is irrelevant is inadmissible. *Richardson v. Children's Hosp.*, 280 Neb. 396, 787 N.W.2d 235 (2010). The exercise of judicial discretion is implicit in determining the relevance of evidence, and an appellate court will not reverse a trial court's decision regarding relevance absent an abuse of discretion. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015).

At the show cause hearing, Luke argued that exhibit 5 was relevant because it tended to show that Dominique's bruises were not caused by any abuse he suffered at the hands of Luke and Ashley, but instead were caused by a tackle football game he played with his friends. Essentially, Luke argued that if Dominique's friend suffered bruises from the football game, then Dominique must have also suffered bruises. Luke's assertions about the relevancy of exhibit 5 are misplaced.

Although the origin of Dominique's bruises was a contested issue at trial, a photograph of bruising on Dominique's friend does not prove anything about how Dominique acquired his bruises. This is especially true when we consider the testimony of Dominique's friend's mother, who indicated that exhibit 5 was taken a few days after the tackle football game Dominique and his friend played in and after Dominique's friend had participated in a separate football practice. Accordingly, exhibit 5 does not even definitively demonstrate how Dominique's friend obtained his bruises, let alone how Dominique obtained the bruises on his body. The district court did not commit plain error in excluding exhibit 5 from evidence.

### 4. GRANTING OF DOMESTIC ABUSE PROTECTION ORDERS

Luke and Ashley next argue that the district court erred in finding sufficient and credible evidence to warrant granting each of the protection orders. In analyzing the court's decision to grant the protection orders, we focus first on the entry of the domestic abuse protections granted against Luke and Ashley and in favor of Kelly and Dominique.

The Protection from Domestic Abuse Act (the Act), Neb. Rev. Stat. § 42-901 et seq. (Reissue 2008 and Cum. Supp. 2014), allows any victim of domestic abuse to file a petition and affidavit for a protection order pursuant to § 42-924. Abuse is defined under the Act as the occurrence of one or more of the following acts between household members:

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;
> (b) Placing, by means of credible threat, another person in fear of bodily injury . . . ;
> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318.

§ 42-903(1).

The Act defines "family or household member" to include "persons who have a child in common" and children. § 42-903(3). As such, any abuse perpetrated by Luke against either Kelly or Dominique is covered by the Act. In addition, the definition of "family or household member" also includes "persons who are presently residing together or who have resided together in the

past." *Id*. As such, any abuse perpetrated by Ashley against Dominique is covered by the Act, since Ashley lived with Dominique in Luke's home at the time the abuse occurred.

(a) Case No. A-15-961

Luke argues that the district court should not have issued a protection order against him and in favor of Kelly because there was no credible evidence presented at the show cause hearing to prove that he ever abused her, as that term is defined in the Act. As a part of his argument, Luke asserts that Kelly was "completely uncredible [sic] as a witness." Brief for appellants at 27.

In Kelly's petition and affidavit, she alleged that Luke has repeatedly threatened to harm her or kill her. According to Kelly, these threats occurred as recently as August 2015, after Dominique told Kelly that he was being abused by Luke and Ashley. However, that was not the first, or the only, time that Luke has threatened her. Kelly indicated that Luke repeatedly threatened her with physical harm when they "went through [a] custody battle" over Dominique and when she would pick Dominique up for her visitation time. During Kelly's testimony at the show cause hearing, she indicated that Luke has threatened her on various occasions over the last 7 or 8 years. The most recent, in-person, threat occurred on August 1, 2015. On that date, Luke became frustrated when Kelly told him she would not give him additional money to buy Dominique shoes. Luke told her that her husband could not protect her forever and that he knew how to find her alone. In addition, Kelly stated that Luke threatened to slice her throat with a knife. As a result of Luke's threats, Kelly said she is fearful for her safety and the safety of her family. In fact, Kelly indicated that she has made it a point to never be alone with Luke.

At the show cause hearing, Kelly's husband, Mike, generally corroborated Kelly's testimony that Luke has repeatedly threatened her by telling her he will eventually catch her when she is by herself. Dominique also corroborated Kelly's testimony when he testified that Luke has threatened to slice Kelly's throat.

Pursuant to § 42-903(1), a threat constitutes abuse under the Act when it is a "credible threat" which places another person in fear of bodily injury. A credible threat is defined as

> A verbal or written threat, including a threat performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct that is made by a person with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the person making the threat had the intent to actually carry out the threat.

§ 42-903(1)(b).

Based on Kelly's testimony at the hearing, we conclude that there was sufficient evidence to demonstrate that Kelly suffered the type of "abuse" contemplated by § 42-903(1)(b). Luke's statements to Kelly that her husband could not protect her forever; that he would be able to find her alone; and that he would slice her throat with a knife, constitute credible threats which placed Kelly in fear of bodily injury.

On appeal, Luke asserts that Kelly's testimony at the hearing is not sufficient to prove that he threatened her because her testimony was not credible. Specifically, Luke argues that Kelly's

allegations in her petition and affidavit are not consistent with her testimony at the hearing. In particular, Luke points to Kelly's allegation in her affidavit that he threatened her on August 30 and 31, 2015, after she failed to return Dominique to him due to Dominique's reports of abuse. In her testimony at the hearing, Kelly did concede that Luke did not directly threaten her on those dates. She testified that she did not mean to indicate that Luke made any direct threats on August 30 or 31, but rather, she meant to explain that Luke has repeatedly threatened her for years.

While we do note that there are some inconsistencies between Kelly's allegations in her petition and affidavit and in her testimony at the hearing, we also note that the district court specifically found her to be more credible than Luke. And, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Sarah K. v. Jonathan K.*, 23 Neb. App. 471, 873 N.W.2d 428 (2015).

Considering the district court's determination that Kelly was a credible witness and considering that she did consistently indicate that Luke has repeatedly threatened her with physical harm throughout the past 7 or 8 years, we conclude that there was sufficient evidence to warrant the granting of the domestic abuse protection order against Luke and in favor of Kelly. We find no plain error in the decision of the district court to enter this protection order.

(b) Case No. A-15-962

Luke argues that the district court should not have issued a protection order against him and in favor of Dominique because there was no credible evidence presented at the show cause hearing to prove that he ever caused bodily injury to Dominique. Luke asserts that the evidence presented at the show cause hearing established that Dominique "was a happy, healthy, well-cared for, nine-year-old boy that was free of any injuries except those sustained in a rough tackle football game. . . ." Brief for appellants at 21.

At the show cause hearing, Dominique refuted Luke's assertions that he was injured while playing tackle football with his friends. He testified, instead, that Luke has repeatedly subjected him to physical abuse which has resulted in injuries. Dominique testified that when Luke is angry or "drinks too much beer," he hits Dominique and his siblings "hard" with his fists or with a belt. In addition, Luke has "choked" Dominique and his siblings. Dominique said that he has scars on his stomach and his chest from getting hit with a belt. Dominique indicated that the bruises which were photographed by police in August 2015 were a result of Luke hitting him and elbowing him on a family vacation a couple of weeks prior to the photographs being taken. Dominique stated that he is afraid that if he returns to Luke's home, he will be hurt again.

Based on Dominique's testimony at the hearing, we conclude that there was sufficient evidence to demonstrate that Dominique suffered the type of "abuse" contemplated by § 42-903(1)(a). Dominique's testimony demonstrates that Luke has repeatedly and intentionally caused bodily injury to him.

On appeal, Luke asserts that Dominique's testimony at the hearing is not sufficient to prove that Luke caused him bodily injury because Dominique's testimony was not credible. Specifically, Luke argues that Dominique's testimony about the abuse is not consistent with the allegations in the petition and affidavit filed on his behalf by Kelly and that other evidence presented at the hearing directly contradicts Dominique's testimony.

We agree with Luke's assertion that Dominique's testimony at the hearing does not mirror the allegations contained in the petition and affidavit. But, as Luke points out in his brief to this court, the petition and affidavit was not authored by Dominique. Kelly submitted the petition and affidavit based upon her understanding of what happened in Luke and Ashley's home. Dominique's testimony at trial provided the district court with an explanation of what occurred in that home in Dominique's own words.

Moreover, although Luke directs our attention to the testimony of the other witnesses, like Dominique's teacher and the DHHS caseworker, who generally refuted Dominique's testimony of abuse, we note that the reliability of this witness testimony is weakened somewhat by the limited amount of time the witnesses spent with Dominique. In particular, Dominique's third grade teacher only had him in class for 10 days prior to his removal from Luke's home. And, the DHHS caseworker had somewhat limited involvement in Dominique's case due to the imposition of the protection orders shortly after the commencement of the juvenile court proceedings. Additionally, the photos of Dominique's injuries in August 2015 when he reported the abuse to Kelly depict significant bruising and injuries in various stages of healing. This evidence refutes the testimony of witnesses who indicated that they never saw any injuries on Dominique.

The district court explicitly found the testimony of Dominique to be more credible than the testimony of Luke and Ashley and, based upon the district court's decision to continue the protection order, the court also implicitly found Dominique's testimony to be more credible than the other evidence presented by Luke in his effort to prove that he did not physically abuse Dominique. Because the district court heard and observed all of the witnesses at the show cause hearing, we give deference to its decisions concerning witness credibility.

Considering the district court's determination that Dominique was a credible witness and considering Dominique's detailed testimony about the physical abuse he suffered at the hands of Luke, we conclude that there was sufficient evidence to warrant the granting of the domestic abuse protection order against Luke and in favor of Dominique. We find no plain error in the decision of the district court to enter this protection order.

(c) Case No. A-15-964

Ashley argues that the district court should not have issued a protection order against her and in favor of Dominique. Ashley's argument on appeal mirrors Luke's assertion that Dominique was simply not a credible witness and that his testimony, alone, did not warrant the entry of a protection order.

At the hearing, Dominique testified that Ashley hits him and that if he cries, she will hit him harder. He indicated that he has scars on his stomach and his chest from being hit. Dominique also testified that Ashley has pulled him up the stairs by his hair and has grabbed him by the arm "really hard." Ashley has also told Dominique and his siblings that she will "kill" them. Dominique indicated that he has witnessed Ashley abusing his 11-year-old sister. Dominique indicated he is afraid to return to Luke and Ashley's home.

Based on Dominique's testimony at the hearing, we conclude that there was sufficient evidence to demonstrate that Dominique suffered the type of "abuse" contemplated by § 42-903(1)(a). Dominique's testimony demonstrates that Ashley has repeatedly and intentionally caused bodily injury to him. And, contrary to Ashley's assertions on appeal concerning

- 11 -

Dominique's credibility, the district court specifically found him to be a credible witness. As such, we conclude that there was sufficient evidence to warrant the granting of the domestic abuse protection order against Ashley and in favor of Dominique. We find no plain error in the decision of the district court to enter this protection order.

### 5. GRANTING OF HARASSMENT PROTECTION ORDER IN CASE NO. A-15-963

We now address the district court's decision to grant a harassment protection order against Ashley and in favor of Kelly. Upon our review, we conclude that there was not sufficient evidence to warrant the granting of this protection order. We find that the district court committed plain error in entering this protection order.

A harassment protection order is proper when a person has "engage[d] in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2008); *Linda N. on behalf of Rebecca N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014). A course of conduct is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person." § 28-311.02(2)(b). The Legislature has stated that the purpose for a harassment protection order is to "protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities." § 28-311.02(1).

In Kelly's petition and affidavit, she alleged that Ashley threatened to "come after me and kill me" when Kelly would go to Luke and Ashley's home to pick up Dominique for her parenting time. At the show cause hearing, Kelly reiterated this allegation, testifying that she has been threatened by Ashley when she has gone to pick up Dominique. Kelly testified that Luke and Ashley followed her and watched her, but she did not provide any specifics. In addition, in her petition and affidavit, Kelly alleged that both Ashley and Luke told Dominique that if Dominique reported the abuse he suffered, they would "slice [Kelly's] throat." Kelly admitted at the hearing that she had no personal knowledge about this threat.

Even if we were to assume that the allegations contained in Kelly's petition and affidavit were true and that her testimony was completely credible, we cannot conclude that Ashley's behavior toward Kelly reached a level that would amount to harassment under the statute. Kelly never testified that she was seriously terrified, threatened, or intimidated by Ashley's behavior. In addition, Kelly's generalized testimony about Ashley's behavior, without more specific information, does not establish a "course of conduct" of harassing behavior as that term is defined in the statute.

Given the insufficient evidence presented about Ashley's actions towards Kelly, we conclude that the district court's decision to grant the harassment protection order in favor of Kelly constituted plain error. We reverse the court's order and remand with directions that the district court vacate the harassment protection order and enter an order dismissing Kelly's petition against Ashley.

## VI. CONCLUSION

We find no plain error in the entry of the three domestic abuse protection orders appealed at case Nos. A-15-961, A-15-962, and A-15-964, and affirm the same. However, we do find plain error in the entry of the harassment protection order against Ashley and in favor of Kelly appealed at case No. A-15-963, and therefore reverse and remand with directions that the district court vacate the harassment protection order and enter an order dismissing Kelly's petition against Ashley.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.