Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/31/2017 09:08 AM CST

State of Nebraska on behalf of Natalya B.
and Nikiah A., minor children, appellee,
v. Bishop A., defendant and third-party
plaintiff, appellee, and Mimi B.
third-party defendant, appellant.

___ N.W.2d ___

Filed January 31, 2017.    No. A-16-368.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Judgments: Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

4. ____: ____. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result.

5. **Visitation.** The best interests of the children are the primary and paramount considerations in determining and modifying parenting time.

6. ____. The right of parenting time is subject to continuous review by the court, and a party may seek modification of parenting time on the grounds that there has been a material change in circumstances.

7. **Directed Verdict: Evidence.** A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from

- 478 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

the evidence, that is, when an issue should be decided as a matter of law.

8. **Directed Verdict: Appeal and Error.** In reviewing a directed verdict, an appellate court gives the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence.

9. **Child Custody: Visitation: Stipulations.** It is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests, which is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties or by third parties.

10. **Judgments: Appeal and Error.** When evidence is in conflict, an appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

11. **Records: Appeal and Error.** When reviewing a decision of a lower court, an appellate court may consider only evidence included within the record.

12. ____: ____. A party's brief may not expand the evidentiary record.

13. **Trial: Evidence: Records: Appeal and Error.** The erroneous admission of evidence in a bench trial is not reversible error if other relevant evidence, properly admitted, sustains the trial court's necessary factual findings; in such case, reversal is warranted only if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence.

14. **Modification of Decree: Child Support: Appeal and Error.** Although an appellate court reviews the modification of child support payments de novo on the record, it affirms the trial court's decision absent an abuse of discretion.

Appeal from the District Court for Lancaster County: Robert R. Otte, Judge. Affirmed.

B. Gail Steen, of Steen Law Office, for appellant.

Stephanie Flynn, of Stephanie Flynn Law Office, P.C., L.L.O., for appellee Bishop A.

Inbody and Pirtle, Judges, and McCormack, Retired Justice.

- 479 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

Pirtle, Judge.

## I. INTRODUCTION

Mimi B. appeals the order of the Lancaster County District Court which modified Bishop A.'s parenting time and temporarily suspended his child support obligations. For the reasons that follow, we affirm.

## II. BACKGROUND

Mimi and Bishop are the parents of two minor children, Natalya B., born in 2007, and Nikiah A., born in 2005. The children made allegations of physical and sexual abuse against their father, Bishop. At the time of the allegations, Natalya was 3 years old and Nikiah was approximately 5 years old. No criminal or juvenile court proceedings were filed as a result of these allegations, but the allegations have been a central issue throughout this case.

An order was entered in August 2012 granting custody of the minor children to Mimi, subject to Bishop's parenting time, as set forth in an incorporated parenting plan. The parenting plan was signed by both Bishop (identified as the "Defendant"), and Mimi (identified as the "Third-Party Defendant"), who were both aware of the abuse allegations at that time.

The original parenting plan provided a "step-up" parenting time schedule. It stated:

Because there has been no parenting time for a significant period of time, [Bishop's] visits with the children should begin in a therapeutic setting/family therapy and continue for a period of at least four (4) sessions, or until the therapist recommends parenting time increase to Step 2 below. This family therapy shall not be administered by the child's current therapist, but rather by a different therapist. [Bishop's] suggestion is that Bertine Loop be named to direct these family therapy sessions. It is [Mimi's] responsibility . . . to make sure the children attend these sessions and are picked up from these sessions. . . . Bertine should communicate with both counsel

- 480 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

after each of the first four (4) sessions in order to help each counsel assess progress and comfort level of Bishop and the girls. Bertine should also communicate with both counsel about realistically proceeding to Step 2 in a timely fashion and potential persons to supervise/monitor those visits set forth in Steps 2, 3 and 4[.]

Steps 2, 3, and 4 were also listed in the parenting plan, providing for progressively longer parenting time with decreasing levels of supervision. Ultimately, the plan was for Bishop to enjoy a normal parenting schedule, including alternating weekends and holidays.

Bishop filed a complaint for modification on May 14, 2014, alleging that (1) he had not had any contact with the minor children since the entry of the court's order; (2) the therapeutic visitation provided for in the parenting plan had not occurred, so none of the steps in the step-up plan had been satisfactorily completed; and (3) it is in the best interests of the minor children to award him parenting time.

Mimi filed an answer, denying the allegations in Bishop's complaint and affirmatively alleging:

[N]o therapist who has worked with the minor children believe[s] it is in their best interest for them to have contact with [Bishop] due to disclosures of sexual abuse and other physical abuse. [Mimi] affirmatively asserts and alleges [Bishop] has admitted to such abuse to [Mimi], yet has attempted to have contact with the minor children outside of the Court's orders.

Bishop filed a motion for temporary orders on November 3, 2014. On December 19, the court overruled the motion in part and ordered the parties to establish mediation and/or counseling for Bishop and report progress by February 2, 2015. Bishop filed another motion for temporary orders on January 27, and the motion was sustained on February 20. The court ordered Bishop to engage in therapy, either with "M.Paine or M.Fran Flood," who are named but not otherwise identified in our record, or with someone of his choice who was approved

- 481 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

by Mimi. The court further ordered that Bishop could begin scheduled parenting time after completing a month of therapy, so long as it was supervised by someone approved by Mimi, and such approval could not be unreasonably withheld.

Bishop filed another motion for temporary orders on April 21, 2015, and the motion was sustained. A journal entry, signed by the judge on May 29, stated that Bishop "shall be allowed visitation with the minor children so long as it is supervised." The journal entry also stated that the temporary parenting time should be exercised on Saturday or Sunday each weekend for a period of not more than 2 hours. The court provided that "[t]o the extent [Mimi] does not approve someone able and willing to supervise the visitation [Bishop] shall receive a $50 credit toward child support, the total amount of which is to be determined at trial . . . ." No parenting time occurred.

Trial took place on August 18, 2015. Bishop's "significant other" testified that she had been in a relationship with Bishop for about 5 years. She was aware of the allegations of abuse, but she had no concerns about living with him or allowing him to be around her children. Another witness testified that he was aware of the allegations of abuse, but trusted Bishop to be around his children. The witness testified that Bishop was happiest when he was with Natalya and Nikiah and that the girls loved Bishop.

Bishop testified that he became aware of the allegations against him on August 1, 2011, and that he spoke to Mimi and police officers about the allegations of abuse. Bishop was not cited by law enforcement, and there have been no criminal actions or juvenile court proceedings regarding these allegations. Bishop testified that Mimi has filed protection orders against him and that he pled no contest to violations of these orders. At the time of trial, Bishop was on probation for violation of a protection order.

Bishop testified that he participated in the required family therapy with Bertine Loop-Schenken (Loop) and sought information regarding group therapy sessions. Bishop was

- 482 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

notified that Loop recommended additional counseling serv-
ices, and he participated in 8 weeks of therapy with Kristin
Smith in 2013. He contacted several agencies and individuals
regarding supervision for visits, but despite his efforts, no
family therapy ever occurred. He asked Dr. Lisa Blankenau
to supervise visits, but she declined. He testified that the
last time he had any contact with the children was February
15, 2011.

Bishop also testified that he was told that supervised visits
could occur after he completed a month of therapy, which he
completed with Dr. Steven Blum in 2015. They discussed how
to act around the children and how to safely reestablish a con-
nection with the children.

Mimi testified that she met with Loop, but that the children
had not. She stated that she agreed to the original parenting
time, which included a plan for graduated visitation, but that
she did not believe it to be in the children's best interests.
Mimi did not believe that any visitation should occur until
Bishop "takes responsibility and gets help for himself." She
said Bishop should admit the children's allegations and seek
professional help. Mimi testified that she was aware of the
temporary order for supervised visitation but that there was
no one she felt comfortable with as a supervisor until Bishop
sought help.

Mimi moved for directed verdict, and the court overruled
her motion. The court noted that the 2012 order contained a
graduated schedule for parenting time and placed the decision-
making authority with a counselor for making parenting time
decisions. The court noted that Nebraska case law states that
arrangements of this nature are not proper.

Rita Regnier testified that she met with Natalya and Nikiah
in individual and family therapy approximately 19 times
between 2013 and 2015. In 2015, Regnier met with the chil-
dren twice, once in March and once in May. Regnier became
aware that Nikiah's anxiety was heightened prior to court pro-
ceedings, leading to self-harming behavior. This information

- 483 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

was provided by Mimi and was not gained through personal contact with the children. She said the children have been very consistent in stating that they care about their father but that they did not want to see him. Regnier testified that there were concerns the children had been coached but that in her opinion, they were not and their accounts of the alleged abuse were consistent.

Regnier opined that the children needed to be given some control over whether visitation with Bishop occurred. She concluded that visitation would not be in the children's best interests unless they demonstrated a desire to see him. Regnier did not meet or see Bishop around the children, and she testified that, given her relationship with Mimi and the children, she could not be objective toward him.

Loop testified that she had not had contact with the parties since October 2013 and that, at that time, she had recommended that Bishop and the children have no contact. Loop testified that further individual therapy was needed prior to starting family therapy.

On October 5, 2015, the trial court issued an order finding that Bishop had met his burden to show there had been a material change of circumstances and that the prior orders of the court should be modified accordingly. The court found that establishing parenting time with Bishop was in the children's best interests and that such parenting time should be entered into cautiously. However, the court found the evidence was insufficient to create an appropriate long-term parenting plan. The court found that this could only be completed after the children were prepared for contact with their father and supervised parenting time had occurred. The court issued temporary orders for Bishop to attend counseling focused on minimizing discomfort or stress in reconnecting with the children and for the children to engage in counseling to prepare them for contact with their father. Therapeutic parenting time was scheduled to begin the week of November 23, 2015. The court scheduled an affidavit-only hearing on

- 484 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

January 8, 2016, to review the temporary order "as well as proposals for ongoing parenting time prior to entry of a final order by the court."

On November 3, 2015, Mimi filed a motion for order to show cause alleging Bishop attempted to contact the children in public on October 8. She sought an order of the court directing Bishop to appear and show cause why he should not be punished for contempt of court as a result of his "willful and contumacious failure to comply with the Court's Orders of August 10, 2012 and October 5, 2015." A hearing was scheduled for November 30.

Mimi filed a motion to modify parenting time on November 19, 2015. She alleged that the children were not in a position to begin visits with Bishop at that time.

At the hearing on November 30, 2015, the court stated that eventually visits between Bishop and the children would happen but said they would "walk slowly." The court noted the difficulty of determining the disputed factual matters while balancing the children's anxiety and the children's best interests. Following the hearing, the court filed temporary orders which suspended Bishop's child support obligation, temporarily suspended visitation between Bishop and the children pending further hearing, continued the obligation for the children to participate in individual therapy, and ordered Mimi to prevent her mother from participating in or discussing therapy sessions with the children. Mimi was also ordered to pay the costs of therapeutic visits between Bishop and the minor children.

A final hearing took place on January 20, 2016. The court received evidence through affidavits upon agreement of the parties and an offer of proof as to Bishop's testimony. The parties stipulated to an affidavit from Regnier as to her recommendations and professional opinions regarding parenting time.

The court filed an order on March 7, 2016. The court found the evidence before it did not support a finding of contempt.

- 485 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

The court vacated the order to show cause and dismissed Mimi's contempt application. The court also found that visitation between Bishop and the minor children continued to be in the children's best interests in the long term. The court ordered the children to continue in counseling to prepare them for contact with Bishop, and it set a new schedule for gradually introducing parenting time and increasing the duration of time Bishop spends with the children incrementally. The court ordered Bishop's child support obligation to resume on September 1.

## III. ASSIGNMENTS OF ERROR

Mimi asserts the district court erred in overruling her motion for directed verdict and in modifying the parties' parenting plan. She asserts that the district court's decision was made in reliance on improperly received evidence and that the district court erred in temporarily suspending Bishop's child support obligation.

## IV. STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Floerchinger v. Floerchinger, ante* p. 120, 883 N.W.2d 419 (2016).

[2] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.* See, also, *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

[3,4] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable

- 486 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
24 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

or if its action is clearly against justice or conscience, reason, and evidence. *Id.* A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## V. ANALYSIS

### 1. MODIFICATION OF PARENTING TIME

[5,6] The best interests of the children are the primary and paramount considerations in determining and modifying parenting time. *State on behalf of Maddox S. v. Matthew E.*, 23 Neb. App. 500, 873 N.W.2d 208 (2016). The right of parenting time is subject to continuous review by the court, and a party may seek modification of parenting time on the grounds that there has been a material change in circumstances. *Id.* See, also, *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997).

In 2012, the parties agreed to a parenting plan allowing Bishop to have parenting time with the minor children pursuant to a "step-up parenting time schedule." Step 1 of the plan stated that Bishop would have visits with the children in "a therapeutic setting/family therapy" for at least four sessions, or until the therapist recommended the parties should progress to Step 2, and beyond. In 2014, Bishop filed a complaint for modification, asserting that a material change of circumstances which warranted modification of the order had occurred. Specifically, he asserted that he had not seen and had not been able to contact the children since the adoption of the parenting plan and that no therapeutic visits had occurred. Bishop asserted that the court should award him reasonable parenting time, because it was in the best interests of the minor children.

### (a) Directed Verdict

Mimi asserts the district court erred in denying her motion for directed verdict at the close of Bishop's evidence at trial.

- 487 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

She asserts there was no material change of circumstances justifying modification of the existing parenting plan.

[7,8] A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Arens v. NEBCO, Inc.*, 291 Neb. 834, 870 N.W.2d 1 (2015). In reviewing that determination, we give the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence. *Id.*

[9] Nebraska case law dictates that it is the responsibility of the trial court to determine questions of custody and visitation of minor children according to their best interests, which is an independent responsibility and cannot be controlled by the agreement or stipulation of the parties or by third parties. *Mark J. v. Darla B.*, 21 Neb. App. 770, 842 N.W.2d 832 (2014). After reviewing the existing parenting plan, the district court found it provided for an improper "delegation of authority" to allow a therapist or other third party to determine when and if parenting time should occur. Thus, the court determined that the parenting plan must be modified.

Mimi asserts that the district court does not give weight to the fact that Bishop stipulated to the 2012 order which included the provision that a therapist make determinations regarding when parenting time should move forward. However, this court and the Nebraska Supreme Court have found, as stated above, that the authority to determine the extent and time of visitation is an independent responsibility of the court and cannot be controlled by the agreement or stipulation of the parties or by third parties. *Mark J. v. Darla B., supra.* See *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002). Thus, the trial court did not err in determining that the original parenting plan must be modified and did not err in overruling Mimi's motion for directed verdict.

- 488 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

### (b) Best Interests

The court found that parenting time with Bishop is in the children's best interests. The March 2016 order established a plan to gradually reintroduce visits between Bishop and the children in a safe, controlled environment and to work up to longer periods of unsupervised parenting time. Mimi argues the district court erred by finding that any parenting time with Bishop is in the children's best interests.

Neb. Rev. Stat. § 43-2923(1) (Reissue 2016) states that the best interests of a child require a parenting arrangement and parenting plan providing for a "child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress for school-age children." Section 43-2923(6) states that the court shall consider the best interests of the minor children, which includes, but is not limited to the following factors:

> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member. . . ; and
>
> (e) Credible evidence of child abuse or neglect or domestic partner abuse.

The court heard evidence from the parties, witnesses, and professionals regarding the history of the minor children and the reports that they have experienced fear and anxiety related to their relationship with their father. The court found that it is clear that the children are fearful of Bishop and may not feel safe in his presence, but that Bishop denied the abuse and the court had "no basis to act on that fear."

- 489 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

While the court recognized that witnesses opined that contact with Bishop could be emotionally harmful, even in a therapeutic setting, the court also considered the fact that the witnesses had little or no personal contact with Bishop. Regnier testified that she had never met Bishop, that she has not seen him around the children, and that her opinion was based solely on communications with Mimi and the children. She testified that she saw no benefit to seeing Bishop for therapy, because she could not be objective toward him.

There was no expert testimony specifically supporting the establishment of parenting time between Bishop and the children. However, Bishop requested assistance from several therapists and his requests were declined. Specifically, Dr. Blankenau declined to facilitate the court-ordered visits, in part due to Regnier's recommendation that visits were not in the children's best interests at that time.

The court considered the evidence that Bishop is employed, has frequent contact with children, and expressed an understanding that reestablishing a connection with his own children must be a gradual process. Bishop's "significant other" testified that she was aware of the allegations of abuse, yet expressed no hesitation in allowing Bishop to come in contact with her own children. The court found that Bishop could be trusted to slowly, carefully, and prudently reestablish contact with the children.

[10] An appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions on the matters at issue. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Floerchinger v. Floerchinger, ante* p. 120, 883 N.W.2d 419 (2016). See, also, *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015).

Upon our review, it is clear that the district court considered the health, welfare, and social behavior of the minor children, as well as their desires and wishes. The evidence shows that

- 490 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

the relationship of the children to Bishop was strained prior to the commencement of the initial action and that there has been no contact for a number of years, beginning with the original allegations of physical and sexual abuse. However, in the most recent years, Bishop was allowed no contact with the children despite court orders specifically allowing supervised therapeutic visits.

We do not discount the children's allegations or Mimi's concerns, but there is little in the record to support a finding that Bishop should be barred from all future interaction with the children. The parties agree that the children have a genuine fear and belief that Bishop behaved inappropriately, but there is no evidence *in our record* that abuse by Bishop did, in fact, occur. The parties agree that there were no criminal charges or juvenile court proceedings brought as a result of these allegations.

Mimi argues that Bishop did not deny the allegations of abuse in his testimony. While this is true, it is a mischaracterization of the evidence, as he was not asked on direct or cross-examination to address whether the alleged abuse occurred. Bishop did deny improper contact with his daughters in his affidavit stating that he has dealt with "false allegations of abuse." He also denied the allegations in his communication with counselors and therapists, and Loop testified that she was aware of this fact.

The children did not testify as to their feelings regarding this situation or their desire to see their father going forward. Mimi argues Bishop did not provide any evidence the children wanted to see him, but such evidence would be difficult to obtain given that he has not been permitted to see the children since the entry of the original parenting plan in 2012. The statements the children made to Regnier are the only evidence in the record of the children's wishes regarding parenting time. With regard to Regnier, the court found that her strongly held opinions "apparently have crowded out any

- 491 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

alternative" to barring further contact between Bishop and the children.

Mimi challenges the court's finding of Bishop's fitness to parent, alleging that there is "uncontroverted evidence of his violence against [her] as documented by protection orders, convictions for violations of those protection orders, and being on parole at time of trial." Brief for appellant at 22. We note that Mimi incorrectly states that Bishop was on parole, when he was actually on probation at the time of trial. Further, the record presented does not support the assertion that there was uncontroverted evidence of violence by Bishop against Mimi.

[11,12] When reviewing a decision of a lower court, we may consider only evidence included within the record. *Home Fed. Sav. & Loan v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993). See, also, *Ging v. Ging*, 18 Neb. App. 145, 775 N.W.2d 479 (2009). A party's brief may not expand the evidentiary record. *Id.* We do not discount the fact that a protection order was granted, or the fact that Bishop admitted to violating such protection order. The record does contain evidence of an alleged probation violation in which Mimi asserted that Bishop improperly contacted her by telephone. However, any specific instances or allegations of violence by Bishop toward Mimi are not a part of the record, and thus, we may not consider any alleged violence as a factor in determining the children's best interests.

We find the district court considered the appropriate factors, and we give deference to the district court's attempt to find a workable solution to best protect the children's best interests. Clearly, the evidence was in conflict, and we consider and give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Floerchinger v. Floerchinger, ante* p. 120, 883 N.W.2d 419 (2016). Under the circumstances of this case and in consideration of the record that was presented to us for

- 492 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

review, we cannot say that the district court abused its discretion in finding that parenting time with Bishop, beginning in a safe space under the supervision of a therapist, was in the children's best interests.

### 2. Reliance on
### Improper Evidence

Mimi asserts the district court's findings were not supported by properly received evidence. She argues that the court should consider only evidence presented in and properly received by the court and that exhibit 16, cited in the district court's order, was not properly received.

Exhibit 16 is a letter from Dr. Blum referencing his therapy sessions with Bishop. This letter was offered at trial on August 18, 2015. Mimi asserted hearsay and foundation objections, and the court took the matter under advisement. The court sustained the objection in the order filed on October 5. In the order, filed March 7, 2016, the trial court referred to exhibit 16, and as a result, Mimi asserts the district court's findings were supported by evidence that was not properly received.

[13] Assuming, without deciding, that the trial court abused its discretion in reviewing the content of exhibit 16, we find there is no reversible error. The erroneous admission of evidence in a bench trial is not reversible error if other relevant evidence, properly admitted, sustains the trial court's necessary factual findings; in such case, reversal is warranted only if the record shows that the trial court actually made a factual determination, or otherwise resolved a factual issue or question, through the use of erroneously admitted evidence. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015).

The district court cited exhibit 16 in stating Dr. Blum's opinion that Bishop "understood and had empathy for the possible fear that his daughters might hold." The parties stipulated that Bishop participated in therapy with Dr. Blum, and Bishop also testified regarding his therapy sessions with him. Bishop testified that they discussed the fact the children "believed

- 493 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

certain things" about him and he would be like a stranger to them at first, due to the time that has passed since they last saw one another. Bishop testified that he and Dr. Blum discussed how displays of affection could be misinterpreted, and Dr. Blum advised him regarding how to approach the children once a parenting time schedule was established. They discussed how to reestablish a connection and find a common bond with the children. The court's reference to and reliance upon this exhibit was limited. We find that the evidence is cumulative and that other relevant evidence, properly admitted, supports the findings of the district court. See *Worth v. Kolbeck*, 273 Neb. 163, 728 N.W.2d 282 (2007).

To the extent that Mimi challenges the court's findings of parental fitness related to parenting time, the sufficiency of the evidence regarding the children's best interests was previously addressed in our discussion of the modification of parenting time.

### 3. Child Support

Mimi asserts the district court erred in suspending Bishop's child support obligation.

[14] Although an appellate court reviews the modification of child support payments de novo on the record, it affirms the trial court's decision absent an abuse of discretion. *Stekr v. Beecham*, 291 Neb. 883, 869 N.W.2d 347 (2015).

The trial court's temporary order on December 10, 2015, stated that Bishop's child support obligation would be suspended commencing November 30 and continuing until further order of the court. At that time, any scheduled visits were suspended until further hearing on Bishop's complaint to modify and Mimi's contempt action. The order also set the date for the next hearing, and the issue of child support was addressed at that time.

The order of March 7, 2016, which is the order at issue on this appeal, continued the suspension of child support temporarily. Bishop's child support obligation was scheduled to

- 494 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

resume on September 1. The parenting plan detailed in the court's order provided that Bishop would have parenting time in increasing frequency and duration, with decreasing supervision over time. By August 15, 2016, the parties were to follow the parenting schedule allowing Bishop reasonable parenting time comporting with *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987). This schedule includes every other weekend and certain holidays. September was to be the first full month where that schedule would apply.

Mimi argues that to "abate child support only hurts the children and rewards [Bishop]." Brief for appellant at 24. She argues that she was not a barrier to Bishop's parenting time with the children, but, rather, it was Bishop's actions and the children's anxiety stemming from being around him that were the barriers.

The child support issue on appeal is the suspension of child support between December 2015 and September 2016. However, the parties' history, related to child support, is relevant in determining whether the district court's order is an abuse of discretion. On May 29, 2015, the court ordered Bishop to be allowed visitation with the minor children so long as it was supervised. In the same order, the court allowed Bishop to receive a $50 credit toward child support if Mimi did not "approve someone able and willing to supervise the visitation." The evidence shows that Mimi never approved anyone to supervise and no visits ever occurred. The child support credit was used by the district court as a means to compensate Bishop for his inability to exercise his court-ordered visitation.

Upon reviewing the evidence at trial, the district court determined that both parties had taken actions which were detrimental to the children and that the court did not believe that Mimi had always "acted in good faith and taken all steps reasonable to promote establishing a reasonable schedule of parenting time with [Bishop]." As previously discussed, the court found that allowing Bishop to have parenting time was

- 495 -

Nebraska Court of Appeals Advance Sheets
24 Nebraska Appellate Reports
STATE ON BEHALF OF NATALYA B. & NIKIAH A. v. BISHOP A.
Cite as 24 Neb. App. 477

in the children's best interests, and we found that this was not an abuse of discretion. A portion of Mimi's brief suggests that child support was suspended indefinitely, when, in fact, child support was suspended from December 2015 to September 2016. In light of the complicated history of these parties, and the fact that Bishop had been allowed no contact with the children since the entry of the original parenting plan, we find the district court did not abuse its discretion in suspending child support temporarily until Bishop was allowed to begin reasonable parenting time.

## VI. CONCLUSION

We find the district court did not abuse its discretion in overruling Mimi's motion for directed verdict, in finding that parenting time with Bishop was in the children's best interests, and in temporarily suspending child support.

AFFIRMED.